IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AUG 14 2008

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA,      )
                               )
        v.                     )      No. 1:08cr131(LMB)
                               )
SAMI AMIN AL-ARIAN,            )
                               )
        Defendant.             )

## MEMORANDUM OPINION

This opinion explains, in detail, the reasons for continuing the jury trial and ordering additional briefing on certain pretrial issues. The defendant, Sami Amin Al-Arian, has been charged with two counts of criminal contempt under 18 U.S.C. § 401(3), based on his refusal to testify before a federal grand jury after receiving orders of immunity issued by Judge Gerald Bruce Lee in this district.

## Background[1]

The factual and procedural posture of this case is complicated and unique. In a superseding indictment dated September 21, 2004, Al-Arian was charged in the Middle District of Florida with seventeen counts, several of which were related to terrorism.[2] After a six-month trial in 2005, Al-Arian was acquitted of eight counts and the jury hung on the remaining nine counts. Instead of retrying Al-Arian on those nine counts, the

---

[1] The government has supplied excerpts of the grand jury record pertaining to this criminal proceeding. Citations to these excerpts will be designated as "ER."

[2] Nine defendants were named in the 53-count indictment.

government and Al-Arian entered a written plea agreement.

Under that agreement, Al-Arian pled guilty on February 28, 2006 to count four of the superseding indictment, which charged a conspiracy to make and receive contributions of funds, goods, or services, to or for the benefit of specially designated terrorists.  As part of the written plea agreement, the parties agreed to a sentencing guidelines range of 46 to 57 months,[3] and the government agreed to recommend the low end of the range.  Furthermore, the government agreed to recommend that the Bureau of Immigration and Customs Enforcement (ICE) expedite Al-Arian's removal from the country once he finished serving his term of imprisonment.  Of critical significance to this litigation, the plea agreement omitted the standard provision requiring the defendant's cooperation with the government.  On May 1, 2006, Al-Arian was sentenced to 57 months by Judge James S. Moody, Jr.

On May 10, 2006, the United States Attorney for the Eastern District of Virginia obtained an order under 18 U.S.C. § 6002 from Judge Lee immunizing Al-Arian and compelling him to testify before Grand Jury 06-1.  ER 2.  On October 18, 2006, Al-Arian filed a Motion to Quash, arguing that his plea agreement in the Middle District of Florida case excused him from having to cooperate with the government.  ER 4.  On October 19, 2006, Al-

---

[3] The conspiracy charge was brought under 18 U.S.C. § 371, which carries a maximum sentence of five years imprisonment, among other penalties.

-2-

Arian appeared before the grand jury, but declined to answer any questions.  ER 3.

The parties then appeared before Judge Lee for a contempt hearing.  The government argued that the issue of whether Al-Arian was immune from having to testify before the grand jury by virtue of his plea agreement was a matter for the United States District Court for the Middle District of Florida.[4]  ER 5.  Judge Lee agreed with the government and directed Al-Arian to file a "motion to enforce his plea agreement" with Judge Moody.  ER 7.  Judge Lee did not issue an order of civil contempt at that time.

On November 9, 2006, without conducting an evidentiary hearing, Judge Moody denied Al-Arian's motion.  ER 18.  Al-Arian filed a notice of appeal to the Eleventh Circuit on November 13, 2006, and, on the following day, he requested that Judge Lee stay all contempt proceedings pending resolution of his appeal to the Eleventh Circuit.  ER 20.  In a hearing on November 16, 2006, Judge Lee denied the request for a stay, finding that Al-Arian had not established either a likelihood of success on the merits of his appeal or irreparable injury if the contempt proceeding went forward.  Al-Arian was held in civil contempt and remanded into custody.  His criminal sentence was tolled while he was

---

[4] See ER 5, at 6 ("[T]his issue of whether this is a violation of Mr. Al Arian's plea agreement in Tampa, Florida, should be brought before the judge who took the plea in Tampa, Florida.").

-3-

incarcerated on civil contempt.  ER 24.  Al-Arian appealed Judge Lee's decision to the Fourth Circuit.  ER 27.

On December 21, 2006, the one-year term for Grand Jury 06-1 ended.  Judge Lee's civil contempt order therefore expired,[5] and Al-Arian resumed serving his criminal sentence.  ER 30.  In light of this development, Al-Arian voluntarily dismissed his appeal to the Fourth Circuit.  ER 31.

A new grand jury, Grand Jury 07-1, was impaneled and, on January 17, 2007, the government obtained a new immunity order from Judge Lee.  ER 33.  On January 22, 2007, instead of appearing before Grand Jury 07-1, Al-Arian appeared before Judge Lee and advised the Court that he would not answer any questions before the new grand jury.  ER 34.  Judge Lee held Al-Arian in civil contempt and ordered that his criminal sentence again be tolled.  ER 35.  On February 21, 2007, Al-Arian filed an appeal of that decision to the Fourth Circuit.  ER 37.

In an unpublished per curiam opinion, the Fourth Circuit held that Judge Lee's contempt order was properly supported by the record and holdings of the district court in the Middle District of Florida.  See In re Grand Jury Subpoena, No. 07-1155, 2007 WL 870380 (4th Cir. March 23, 2007).  Al-Arian's petition for rehearing en banc was denied on May 10, 2007, and he did not

---

[5] Under 28 U.S.C. § 1826, the period of confinement for a witness held in civil contempt "shall not exceed the life of . . . the term of the grand jury."

-4-

seek further review of the civil contempt finding.  ER 46.

On June 20, 2007, after serving approximately six months of incarceration for civil contempt, Al-Arian moved to vacate the contempt order.  Finding that "there's not been a sufficient showing that there's no reasonable prospect that continued confinement will persuade [the defendant] to testify," ER 55, at 29, Judge Lee denied the motion.  ER 56.

On October 12, 2007, after serving approximately 10 months of incarceration for civil contempt, Al-Arian filed a second motion to vacate the contempt order.  ER 60.  On October 16, 2007, Al-Arian appeared before the grand jury, but refused to answer any questions, stating:

> I refuse to testify based on my prior plea agreement
> with the government that I'm not required to testify
> and cooperate in this or any other investigation.  I
> refuse, therefore, to make any further statements.

ER 62.  The following day, the parties again appeared before Judge Lee.  Judge Lee found that Al-Arian's continued incarceration had not yet become punitive, and denied the motion to vacate.  ER 63; ER 64.

On December 10, 2007, Al-Arian filed a third motion to vacate the civil contempt order.  ER 67.  The government did not oppose the request, citing the fact that Grand Jury 07-1 was about to expire on December 20, 2007.  ER 68.  On December 18, 2007, Judge Lee vacated the contempt order.  ER 69.  Al-Arian resumed serving his criminal sentence.

-5-

On January 25, 2008, the Eleventh Circuit affirmed Judge Moody's decision, holding that the plea agreement did not prevent the government from subpoenaing Al-Arian to testify before the grand jury in the Eastern District of Virginia.  See United States v. Al-Arian, 514 F.3d 1184 (11th Cir. 2008).  Al-Arian filed a petition for rehearing en banc on February 15, 2008. Five days later, on February 20, 2008, the government obtained a third immunity order, compelling Al-Arian to testify before Grand Jury 08-1. ER 72.  On March 20, 2008, while his petition for rehearing en banc before the Eleventh Circuit was still pending, Al-Arian was called before the grand jury, but he refused to answer any questions on the basis of his plea agreement and his pending appeal:

> In light of my plea agreement with the government that I don't have to cooperate or testify and my refusal to waive my pending appeal, I will not testify today and will continue my hunger strike.

ER 75.  The government did not seek a third civil contempt order.

On April 1, 2008, the Eleventh Circuit denied the petition for rehearing en banc and, on April 10, 2008, issued its mandate. The following day, Al-Arian, who had completed the sentence imposed by Judge Moody, was released by the Bureau of Prisons into the custody of ICE.[6]  See Cabrera Decl. ¶ 15.  Al-Arian has remained in ICE custody.

---

[6] The Bureau's inmate locator confirms a release date of April 11, 2008.

On June 26, 2008, after pre-indictment negotiations failed, Al-Arian was charged in this district with two counts of criminal contempt under 18 U.S.C. § 401(3), arising out of his refusal to testify before the grand jury on October 16, 2007 and March 20, 2008, in violation of Judge Lee's orders.

On July 30, 2008, Al-Arian filed a petition for certiorari with the United States Supreme Court, seeking review of the Eleventh Circuit's opinion.  That petition is pending.

The defendant has filed a motion to quash the indictment on numerous grounds.  Furthermore, both the government and the defendant have filed multiple motions in limine.  On August 8, 2008, the Court conducted a hearing on these motions.

Discussion

I.   Postponement of Jury Trial

Under 18 U.S.C. § 401(3), the Court "shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as [d]isobedience or resistence to its lawful writ, process, order, rule, decree, or command." To secure a criminal contempt conviction, "the Government must prove beyond a reasonable doubt that the defendant willfully violated a decree that was clear and left no uncertainty in the minds of those that heard it."  United States v. Linney, 134 F.3d 274, 278 (4th Cir. 1998).  A defendant is not guilty of criminal contempt if his conduct "indicates a good faith effort toward

-7-

compliance." <u>Richmond Black Police Officers Ass'n v. City of</u>
<u>Richmond</u>, 548 F.2d 123, 129 (4th Cir. 1977).

As a general rule, court orders must be obeyed.  The Supreme
Court has stated that

> [i]f a person to whom a court directs an order believes
> that order is incorrect the remedy is to appeal, but,
> absent a stay, he must comply promptly with the order
> pending appeal.  Persons who make private
> determinations of the law and refuse to obey an order
> generally risk criminal contempt even if the order is
> ultimately ruled incorrect.

<u>Maness v. Meyers</u>, 419 U.S. 449, 458 (1975).  Therefore, even if a
trial court order is later vacated by the appellate court as
invalid, the individual's initial "disobedience is punishable as
criminal contempt."  <u>United States v. United Mine Workers</u>, 330
U.S. 258, 293 (1947).

Nevertheless, the Supreme Court has also recognized the
difficult situation placed on witnesses like Al-Arian who claim a
privilege against divulging certain information.  "Compliance
could cause irreparable injury because appellate courts cannot
always 'unring the bell' once the information has been released."
<u>Maness</u>, 419 U.S. at 460.  In such cases, the witness has a stark
choice:

> If, as he claims, the subpoena is unduly burdensome or
> otherwise unlawful, he may refuse to comply and
> litigate those questions in the event that contempt or
> similar proceedings are brought against him. . . .  But
> we have consistently held that the necessity for
> expedition in the administration of the criminal law
> justifies putting one who seeks to resist the
> production of desired information to a choice between

compliance with a trial court's order to produce prior
to any review of that order, and resistence to that
order with the concomitant possibility of an
adjudication of contempt <u>if his claims are rejected on
appeal</u>.

<u>United States v. Ryan</u>, 402 U.S. 532-33 (1971) (emphasis added);

<u>see</u> <u>also</u> <u>Maness</u>, 419 U.S. at 463 (resisting a subpoena, and

thereby risking "a final criminal contempt judgment against the

witness if, on appeal, [counsel's] advice produced to be wrong,"

is a "familiar procedure" for obtaining precompliance appellate

review of a claim of privilege).  Therefore, in a circumstance

where the recalcitrant witness refuses to testify based on a

claim of privilege, a criminal contempt charge does not ripen

until after the witness has exhausted his appellate remedies.[7]

When Al-Arian was first called to testify before Grand Jury

06-1 on October 19, 2006, he faced a classic <u>Ryan</u>-type dilemma.

Al-Arian refused to answer any questions, arguing that the 2006

plea agreement protected him from having to testify before the

grand jury or cooperate with any federal criminal investigation

into affairs that were the subject of his Florida conviction.

---

[7] The government's concern that this ruling could impair the
willingness of witnesses to comply with immunity orders is
entirely baseless.  The Court's analysis pertains only to the
government's ability to bring <u>criminal</u> contempt charges against a
recalcitrant witness while an appeal is pending.  The Court still
retains authority to hold a recalcitrant witness in <u>civil</u>
contempt pending his appeal.

Al-Arian had an absolute right to litigate that contention.[8]  <u>See</u> <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise . . . of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").  Had he complied with Judge Lee's immunity order, Al-Arian would have forfeited his right to enforce his plea agreement; no appellate court could "unring the bell."

    After Al-Arian raised this argument, and at the government's express invitation, Judge Lee instructed Al-Arian to litigate his claims pertaining to the 2006 plea agreement before Judge Moody. After Judge Moody denied relief, Judge Lee held Al-Arian in civil contempt until the expiration of Grand Jury 06-1.  This process occurred again with respect to Grand Jury 07-1.  On appeal, the Fourth Circuit adopted Judge Moody's findings and affirmed Judge Lee's civil contempt order.

    In a normal case, the Fourth Circuit's affirmance would have

---

[8] If successful, Al-Arian could request specific performance in the form of a judicial order prohibiting the government from compelling his appearance before the grand jury.  <u>See</u> <u>Field v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1300 (4th Cir. 1992) ("[U]nder <u>Santobello</u>, if the government breaches a plea agreement, the sentence must be vacated and the . . . court must either (i) enforce the plea bargain or (ii) give the defendant an opportunity to go to trial on the original charge.").  The government has conceded that, had Judge Moody concluded that Al-Arian's plea agreement protected him from having to cooperate in any related government investigations, Al-Arian would not have been called before the grand jury in this district.

ended the matter.  The witness rolled the dice under Ryan, took an appeal, and lost.  The government could then prosecute the witness under 18 U.S.C. § 401(3) for his refusal to testify before the grand jury.

In this case, however, the Fourth Circuit has stated that the 2006 plea agreement is "governed by the law of [the Eleventh Circuit] and the proceedings there."  In re Grand Jury Subpoena, 2007 WL 870380, at *1 (emphasis added).  Those proceedings continue to this day, as Al-Arian has a petition for certiorari pending with the United States Supreme Court.  It is possible that Al-Arian's claims with respect to his plea agreement could still be accepted on appeal.  Therefore, at this time, any trial of Al-Arian for criminal contempt is premature.

For these reasons, the trial has been continued to allow Al-Arian to exhaust his appellate remedies.

II.  Validity of the Order of Immunity

Al-Arian has challenged the validity of the immunity orders signed by Judge Lee.  When a recalcitrant witness refuses to testify before a grand jury on the basis of his Fifth Amendment right against self incrimination, the district court, at the government's request, may issue an order of immunity.  See 18 U.S.C. § 6002.  Once such an order is issued,

> the witness may not refuse to comply with the order on
> the basis of his privilege against self-incrimination;
> but no testimony or other information compelled under
> the order (or any information directly or indirectly

-11-

> derived from such testimony or other information) may
> be used against the witness in any criminal case,
> except a prosecution for perjury, giving a false
> statement, or otherwise failing to comply with the
> order.

Id.   In this district, when the government drafts its proposed

immunity orders, the practice has been to use language that

mirrors this statutory provision.[9]

In Al-Arian's case, however, the immunity orders presented

to Judge Lee included language not explicitly contained in §

6002:

> IT IS FURTHER ORDERED that no testimony or other
> information compelled under this Order (or any
> information directly or indirectly derived from such
> testimony or other information) may be used against the
> witness in any criminal case, except a prosecution for
> perjury, giving a false statement, <u>or obstruction of
> justice</u>, or <u>for criminal conduct begun or undertaken
> after the giving of such testimony or provision of such
> other information is completed</u>, or for otherwise
> failing to comply with this Order.

(Emphasis added).   Al-Arian argues that neither the government

nor the Court had authority to include these additional immunity

---

[9] This Court has examined recent immunity requests from the
United States Attorney and the Department of Justice which it has
signed.   In these unrelated cases, the orders mirrored the
language of § 6002.     <u>See, e.g.</u>, Order of April 15, 2008, <u>In re
Grand Jury Investigation</u>, No. 08gj311 (LMB) ("[The witness] is
hereby granted immunity from the use against him in any criminal
case of any testimony or other information compelled under such
order, or any information directly or indirectly derived from
such testimony or other information, except that the above does
not immunize the said [witness] against charges of perjury,
giving a false statement or otherwise failing to comply with the
Order of the Court."); Order of December 19, 2007, <u>In re Grand
Jury Investigation</u>, No. 07gj241 (LMB) (same).

reservations in the order, and that their inclusion invalidates the order. At the August 8, 2008 hearing, counsel for the government indicated that he had included the additional language in his effort to improve the precision and accuracy of the immunity order. However, it is unclear whether either the United States Attorney or the Department of Justice had formally approved the use of this extra-statutory language.

As stated during that hearing, the Court has significant concerns about this conduct. After careful study and deliberation, Congress drafted § 6002 in an effort to establish an immunity that was coextensive with the Fifth Amendment's privilege against self-incrimination. See Kastigar v. United States, 406 U.S. 441, 452 & n.36 (1972). The Supreme Court later ratified use of the statute's provisions to compel testimony from a recalcitrant witness, holding that the conferred immunity was consistent with the privilege. Id. at 459. Any deviation from the statutory language risks impinging on the witness's Fifth Amendment rights, thereby frustrating the operation of the statute and a court's contempt powers. See id. at 449 ("If . . . the immunity granted is not as comprehensive as the protection afforded by the privilege, [the witnesses] were justified in refusing to answer, and the judgments of contempt must be

-13-

vacated.").[10]

   In defending the addition of an "obstruction of justice" reservation, the government argued that courts permit the use of a defendant's immunized testimony in later prosecutions for obstruction of justice. <u>See United States v. Caron</u>, 551 F. Supp. 662, 672 (E.D. Va. 1982). It contends that the inclusion of this additional language simply improved the accuracy of the immunity order.

   The problem with this position is that the language used by the government is untested, thereby opening the door to an argument that the immunity orders were impermissibly unclear. There are other ways to commit "obstruction of justice" beyond making a false statement.[11] As a result, Al-Arian argues that he was left to guess at whether he had received a level of immunity consistent with the Fifth Amendment – <u>i.e.</u>, whether any incriminating statements he might make to the grand jury would

---

[10] A witness may defend against a criminal contempt charge by arguing that the immunity order did not fully protect him from self-incrimination under the Fifth Amendment. <u>See In re Novak</u>, 932 F.2d 1397, 1400-01 (11th Cir. 1991) (noting that, under the collateral bar rule, "an order duly issued by a court . . . must be obeyed" unless it "require[s] an irretrievable surrender of constitutional guarantees").

[11] In <u>Caron</u>, the district court approved the use of immunized testimony to attain an obstruction of justice conviction. However, the defendant's underlying conduct was clear: "[T]he government asserts that the language of 18 U.S.C. § 6002 does not preclude prosecuting the defendant for obstruction of justice <u>embodied in his alleged making of false declarations</u>." <u>Id</u>. at 667 (emphasis added).

result in criminal obstruction charges.

By adding extra-statutory language to the orders presented to Judge Lee, the government has taken these proceedings into uncharted waters.  To ensure that this issue is properly considered, further briefing is needed on the constitutionality of the immunity orders and whether they were sufficiently precise as to inform Al-Arian that he had received a level of immunity consistent with his Fifth Amendment privilege against self incrimination.[12]

### Conclusion

For the reasons stated in open court and in this Memorandum Opinion, the Court has postponed the jury trial to await the disposition of the defendant's petition for certiorari before the United States Supreme Court.  Furthermore, the Court will enter a separate order setting forth a briefing schedule on the validity of the immunity orders at issue.[13]

Entered this _14_ day of August, 2008.

_____
/s/ Leonie M. Brinkema
**Leonie M. Brinkema**
**United States District Judge**

Alexandria, Virginia

_____

[12] The undersigned judge has consulted with Judge Lee about referring this matter back to him for resolution.  Judge Lee indicated that such action was not necessary, and that the undersigned could resolve the defendant's challenges to the validity of the immunity orders he issued.

[13] There is no concern that the delay will implicate the defendant's rights under the Speedy Trial Act, as there are pending pretrial motions before the Court.  See 18 U.S.C. § 3161(h)(1)(F).