IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:08cr131 |
| | ) | |
| SAMI AMIN AL-ARIAN | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT

Defendant primarily argues that the indictment should be dismissed because the orders

that he is charged with violating were invalid as a result of promises he claims were made in

connection with his Florida plea agreement.  Al-Arian's Memorandum in Support of his Motion

to Dismiss the Indictment ("Al-Arian's Memo" ), at 15-16.  Secondarily, he argues that it should

be dismissed because the government cannot prove he acted "willfully." *Id*. at 29.  Finally, he

argues that it should be dismissed because not to do so would undermine the integrity of the

Court and the legal process. *Id.* at 32.  None of his arguments have merit.

I.  Promises Allegedly Made in Connection with the Florida Plea
    Agreement Are Not Grounds for Dismissal of the Indictment

In essence, defendant argues that this Court should dismiss the indictment because Judge

Lee's orders compelling his testimony were invalid.  Al-Arian's Memo at 16.  He claims that the

orders were invalid because the government "committed a *Santobello* violation" by seeking his

compelled testimony in violation of a promise that allegedly was made to him in Florida to "end

all of the Department of Justice's dealings" with him. *Id*. at 15.  As he argued:

> Based on the uncontroverted evidence before this Court, it is clear that the
> government made a material promise to end all of the Department of
> Justice's dealings with Dr. Al-Arian to induce his plea, including barring

>the Department of Justice from seeking compelled testimony from Dr. Al-
>Arian in the future.  The Government committed a *Santobello* violation by
>seeking Dr. Al-Arian's compelled testimony in this jurisdiction in
>violation of this promise and as a result Judge Lee's compulsion orders of
>January 10, 2007 and February 29, 2008 are invalid.  This Court should
>dismiss the indictment because Judge Lee's orders were invalid.

*Id*. at 15-16.  Contrary to his argument, no promise was made to him that this district would not

seek his compelled testimony, and no *Santobello* violation was committed.  Moreover, even if

the orders were invalid, Al-Arian was legally required to obey them on penalty of contempt.

<div align="center">

A.      Whether the Plea Agreement Barred This District from
<u>Seeking Al-Arian's Compelled Testimony Already Was Resolved</u>

</div>

The Fourth Circuit already ruled that Al-Arian's plea agreement should be interpreted in

accordance with the law of the Eleventh Circuit and the proceedings there.  *In re Grand Jury*

*Subpoena*, 221 Fed.Appx. 250, 251 (4th Cir. 2007).  In turn, the Eleventh Circuit squarely

considered the argument that this district was barred by the plea agreement from compelling his

testimony, and rejected it.  *United States v. Al-Arian*, 514 F.3d 1184 (11th Cir. 2008).

As this Court already ruled, the issue "as to whether or not the plea bargain had been

violated when the United States Attorney for this district subpoenaed the defendant to appear

before the grand jury . . . has been put to rest" by the Eleventh Circuit's decision.  1/16/09 Tr. 2.

Thus, that decision "is the law of the case on the issue of the plea agreement and violations

thereof."  *Id.*  In short, the law is settled that the plea agreement bound this district "only" insofar

as we agreed not to prosecute Al-Arian for crimes known to us at the time of the plea, and did not

"extend any purported immunity to Al-Arian from grand jury subpoenas."  *Al-Arian*, 514 F.3d at

1193, n.4.  This Court should not revisit those rulings.

B. No Promise Was Made In Connection with Al-Arian's Plea
Agreement to Bar This District from Seeking to Compel His Testimony

Even if the Court revisits the issue of whether the plea bargain was violated, however,

its decision should not be informed solely by the declarations of the defendant and his attorneys,

but by standard rules of contract interpretation. *See Puckett v. United States,* 2009 WL 763354,

*6 (U.S. March 25, 2009) ("plea bargains are essentially contracts"). Accordingly, the Court

should recognize that the language of the agreement did not mandate or prohibit compelled

testimony in this district. Similarly, the Court should recognize that, by its terms, the agreement

explicitly bound only certain prosecutors, but those provisions would be rendered meaningless by

an interpretation of the agreement to bar this district from seeking to compel his testimony.

Moreover, the Court should recognize that, despite Al-Arian's assertions today that this

alleged promise was central to his guilty plea, neither he nor his lawyers thought to mention it

when they were specifically asked at his plea hearing whether there existed any side agreements

or inducements. Finally, the Court should recognize that, while the prosecutors involved in

reaching the plea agreement unequivocally deny the existence of any promise or agreement to bar

compelled testimony, Al-Arian fails even to specify the particular prosecutor who allegedly made

the promise in question. In light of these facts, this Court should reach the same conclusion that

was reached by Judge Moody, Judge Lee, the Fourth Circuit, and the Eleventh Circuit.

1. The Written Plea Agreement Did Not Contain the
Promise at Issue but Did Contain an Integration Clause

Pursuant to standard contract law, courts should enforce a plea agreement's "plain

language in its ordinary sense." *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007).

Further, they "merely construe the terms of the contract the parties have previously signed." *Id.*

-3-

In this case, the written plea agreement did not contain any term prohibiting or otherwise affecting compelled testimony in this district or elsewhere. "Everyone agrees that the written plea agreement in the Middle District of Florida contains no language which would bar the government from compelling appellant's testimony before a grand jury." *In re Grand Jury Subpoena,* 221 Fed.Appx. at 251.

Further, in Paragraph 6, the plea agreement explicitly stated that it did *not* bind any prosecuting authority other than the Middle District of Florida ("MDFL") and the Counterterrorism Section of the Department of Justice ("DOJ"). And, it is undisputed that the written agreement was orally amended - - in open court, at the plea hearing itself - - to bar this district from prosecuting Al-Arian on the basis of facts then known to us. 4/12/06 Tr. 18.[1] Pursuant to standard contract law, the agreement should be interpreted to give meaning to its plain language that no other federal prosecuting authority was bound by it. This Court, accordingly, should interpret the agreement in the same way that Judge Lee, Judge Moody, the Fourth Circuit, and the Eleventh Circuit did: there simply was no provision in it that barred this district from seeking to compel Al-Arian's testimony.[2]

---

[1] *See* Exhibit 17 in our response to this Court's Order of July 27, 2008.

[2] Al-Arian argues that he "specifically required the government to agree to a non-cooperation clause before any final plea agreement could be reached." Al-Arian's Memo at 30. To the contrary, he has shown - - and it is not disputed - - only that the parties agreed not to include a "cooperation" clause in the plea agreement. An agreement not to include a cooperation clause, however, is not equivalent to an agreement to include a *non*-cooperation clause. In other words, the absence of a cooperation clause does not constitute an agreement to bar cooperation (or, for that matter, compelled testimony). If it did, there would be many individuals exempt from grand jury testimony on the grounds that, at some time in their past, they pled guilty pursuant to plea agreements that did not affirmatively contain clauses obligating them to cooperate with investigators. As the Eleventh Circuit explained:

-4-

2.  No One Mentioned the Alleged Promise When
    They Were Asked Whether Any Promises Were
    Made Outside of the Written Plea Agreement

Today, Al-Arian argues that it was central to his agreement to plead guilty that the

government promised him that he would be exempt from being compelled to testify.  To be sure,

such a promise would have been an extraordinary one.  Judge Moody said that, in his career, he

"never heard" of the government making such a promise, and characterized it as "incredible that

such a novel provision would not be placed in the written agreement in clear and specific terms."

Order, November 9, 2006.[3]

Similarly, Executive Assistant United States Attorney ("EAUSA") Zitek represented to

Judge Moody that the government had "never entered into a plea agreement that I know of in the

Middle District of Florida where we had immunized somebody from compulsory process

somewhere else."  11/6/06 Tr. 24.[4]  Indeed, undersigned counsel is in the same position as

EAUSA Zitek and Judge Moody: while it is routine to reach agreements where cooperation is not

required, we are unaware of the United States *ever* agreeing in a plea agreement that a defendant

would, in the future, be immune from a court order to compel his testimony.

Yet, despite the extraordinary nature of the promise allegedly made, and despite its

claimed importance to Al-Arian's agreement to plead guilty, neither he nor his attorneys thought

---

The exclusion of a standard plea agreement provision requiring a
defendant to cooperate with the government, whether voluntarily or under
subpoena, does not establish that the government immunized Al-Arian
from future grand jury subpoenas.

*Al-Arian*, 514 F.3d at 1194.

[3]  *See* Exhibit 18 in our response to this Court's Order of July 27, 2008.

[4]  *See* Exhibit 17 in our response to this Court's Order of July 27, 2008.

to mention it when they appeared in court for his plea hearing, and were expressly asked about the existence of any inducement or promise leading to the guilty plea that was outside of the written plea agreement. At the hearing on April 14, 2006, to confirm Al-Arian's acceptance of the plea bargain, Magistrate Judge McCoun extensively questioned Al-Arian and his attorneys about their understanding of the agreement. 4/14/06 Tr. 18-22. Judge McCoun went over in detail several "concessions" he said the government had made. *Id.* Those concessions explicitly included an agreement to protect Al-Arian from prosecution for any crimes known at the time in this district, *id.* at 18, but no mention was made of any restriction on this district from seeking to compel his grand jury testimony.

Indeed, when, in an abundance of caution, Magistrate Judge McCoun broadly asked Al-Arian whether, "beyond the written plea agreement, have you been promised *anything* from *anybody* that is an inducement to you to appear in court today and plead guilty," Ms. Moreno asked for a minute to confer with her client. *Id.* at 30 (emphasis added). After conferring with Al-Arian, Ms. Moreno reiterated to the Court the importance of the government's promise to expedite his deportation, but said nothing about a purported deal allowing Al-Arian to refuse to give grand jury testimony. *Id.* at 30-31.

Subsequently, Magistrate Judge McCoun directly questioned Al-Arian again on the same topic:

> My question to you is, beyond the discussions and the efforts that apparently are ongoing with regards to deportation, have there been *any other promises* made to you that are an inducement in your mind to you entering a guilty plea? If so, we need to put them on the record.

*Id.* at 32 (emphasis added). Al-Arian replied, "I don't recall anything else." *Id.* He admitted that he had read the entire agreement, and denied that he had been threatened, forced, or coerced into

entering into it. *Id.* at 33, 42. In short, despite repeated questioning on the topic from Judge McCoun, neither Al-Arian nor his lawyers in attendance (Ms. Moreno, Mr. Fernandez, Mr. Gaugish, and Mr. Fugate), mentioned the existence of a side agreement to bar this district from compelling Al-Arian's testimony.

The failure of Al-Arian and his attorneys to raise before Judge McCoun the side agreement they now allege to be so central to his decision to plead guilty cannot simply be attributed to the heat of the moment of appearing in open court. Indeed, Judge Moody had summarized the plea agreement but failed to mention any promise to bar compelled testimony two days earlier in his "In Camera Order On Acceptance of Conditional Plea." *See* Item #1562 on the docket for Case # 8:03-cr-00077-JSM-TBM-1. Had the promise existed as an inducement for the guilty plea, Judge Moody's failure to mention it should have prepared Al-Arian and his lawyers to raise it two days later before Judge McCoun - - but they did not do so. Moreover, had the omission been but a momentary lapse, they could have raised it in an objection to Judge McCoun's Report and Recommendation Concerning Plea of Guilty, but - - again - - they did not. *See id.*, Items 1565, 1558.[5]

---

[5] It appears that Al-Arian also failed to raise the matter in an objection to the summary of the government's obligations under the plea agreement that likely was contained in the Pre-Sentence Investigation Report. We understand that the practice in MDFL is for PSRs to summarize the obligations of the government created by a plea agreement. As best we can tell, the PSR in this case was compiled even before Al-Arian appeared before Judge McCoun, because Judge Moody described it in his order of April 12, 2006. *See* Item #1562, *supra*. We have not seen the PSR, but are confident that, if it actually documented the promise now alleged to have been made, the defendant would have brought it to the Court's attention already. The fact that the defendant has not done so indicates that the alleged promise was not included in the PSR's summary of the government's obligations pursuant to the plea agreement - - and the defendant's failure to object to that omission is another striking omission.

In sum, the promise that Al-Arian claims was made to him would have been - - at the least - - extraordinary. He claims that such a promise was central to his agreement to plead guilty. Yet, neither he nor his attorneys mentioned this extraordinary promise when Judge McCoun specifically asked about the existence of other inducements for the guilty plea, nor at any appropriate time thereafter until he actually was compelled to testify in this district. The absence of any mention in April 2006 of this alleged promise - - now claimed to be so central to Al-Arian's decision to plead guilty - - is far more consistent with it never having been made than with it simply having slipped the minds of all of the people involved.

As EAUSA Zitek told Judge Moody in November 2006:

> There is no provision, and now the Defendant is coming forward and saying, "well, there really was. It was very important. It was central. I would not have agreed to this plea agreement if I had been told that I would have to respond to a subpoena somewhere."
>
> He had ample opportunity, as did every other attorney, to say, when we got to the guilty-plea hearing, "Well the plea agreement is not written quite right. There is something else." ***Nobody said that, because it wasn't on - it wasn't part of it.***

*Id*. at 23-24 (emphasis added). As EAUSA Zitek told Judge Moody, nobody told Judge McCoun that the government had promised that this district would not compel Al-Arian's testimony because no such promise was made.

In light of the foregoing, it makes perfect sense that the Eleventh Circuit already rejected Al-Arian's claim that "the government agreed . . . not to seek future testimony from him." 514 F.3d at 1192. In this regard, the Eleventh Circuit considered not just the contract's integration clause, but also the defense's deafening silence at the plea hearing, for "Al-Arian denied at his

plea hearing that he pled guilty in reliance on any promises or inducements except for those

found in the agreement." *Id.* at 1193.  Thus, the Eleventh Circuit concluded:

> [g]iven these aspects of the plea agreement and plea hearing, we
> cannot conclude that Al-Arian reasonably believed that he would
> forever be immune from all grand jury subpoenas originating from
> any federal prosecutor's office.

*Id*.

Of course, it is situations exactly like this for which the parol evidence rule is applicable.

After all, that rule prevents a party from "supplant[ing] the order of a concluded agreement with

the chaos of a post-factum reconfiguration of the bargain" because he is "unhappy with what his

bargain has bought for him." *Hartman v. Blankenship*, 825 F.2d 26, 28 (4th Cir. 1987).  As in

*Hartman*, the record in this case simply does not support the defendant's contention that the plea

agreement as documented before Judge McCoun was not intended to be the final, exclusive

expression of his bargain with the government.[6]

3.  The Plea Agreement Cannot Bar This District From Compelling
    Al-Arian's Testimony Because Such an Interpretation Would
    <u>Render Superfluous this District's Promise Not to Prosecute Him</u>

Al-Arian's plea agreement plainly provided that it did not bind any federal prosecuting

office *other* than MDFL and the Counterterrorism Section of DOJ:

> It is further understood that this agreement is limited to the Office
> of the United States Attorney for the Middle District of Florida and

---

[6]  Al-Arian heavily relies on the Fourth Circuit's decision in *United States v. Garcia,*
956 F.2d 41(4th Cir. 1992).  *See, e.g.,* Al-Arian's Memo at 16-20.  In *Garcia*, the Fourth Circuit
found that "*Hartman* is distinguishable from this case because the panel majority found that the
oral remark at issue was not a promise," but that "Garcia was plainly promised *in writing* that he
would not be required to cooperate."  *Garcia*, 956 F.2d at 43, n.3 (emphasis added).  Inasmuch as
there is not even any allegation that the promise at issue in this case was made in writing, this
case is controlled by *Hartman* rather than by *Garcia*.

> the Counterterrorism Section of the Department of Justice and
> cannot bind other federal, state or local prosecuting authorities,
> although this office will bring defendant's cooperation, if any, to
> the attention of other prosecuting officers or others, if requested.

Plea Agreement, Para. 6.

Further, it is undisputed that the plea agreement was orally modified in open court to bar

this district from prosecuting Al-Arian for facts already known to it.  As Ms. Krigsman

announced in open court when Al-Arian's plea agreement was considered:

> I have been authorized by the Deputy Assistant Attorney General of the
> Criminal Division to further bind the Eastern District of Virginia such that
> if the Court accepts the plea agreement, the United States Attorney's
> Office for the Eastern District of Virginia likewise will not charge the
> defendant with committing any other federal crimes known to that United
> States Attorney's Office at the time of the agreement related to the conduct
> giving rise to the agreement.

4/22/06 Tr. 18-19.[7]

Al-Arian would have this Court interpret the plea agreement, however, to bar this district

from compelling his testimony, on the grounds of an implicit promise allegedly made to end all

of his business with the United States.  Acceptance of that interpretation, however, would render

meaningless the agreement's explicit provision that it did not bind any federal prosecuting

authority other than the MDFL and the Counterterrorism Section of DOJ.  After all, prosecution

(or compulsion) by *any* federal prosecuting authority that was manifestly exempted from

coverage by the plea agreement would violate the promise claimed by Al-Arian.  Moreover,

---

[7]  Al-Arian suggests that this oral modification somehow establishes that the agreement between the parties was ambiguous enough to encompass the promise that he now alleges was made but never mentioned at the plea hearing.  Al-Arian's Memo at 15, n.9.  To the contrary, this oral amendment establishes that the parties well knew how to modify the agreement to encompass a promise that had been left out of the plea document - - when the promise was important enough to remember that it existed.

acceptance of that interpretation also would render meaningless the explicit oral amendment that this district was barred from prosecuting Al-Arian on the basis of facts then known to us; after all, the promise alleged by Al-Arian would have barred prosecution by this district anyway. As a result - - and regardless of any other reason - - Al-Arian's interpretation must be rejected.

An elementary rule of contract interpretation is that a contract should not be interpreted in a way that would render any provision of it superfluous or meaningless:

> We should remember that the contract must be so construed as to give meaning to all its provisions, and that that interpretation would be incorrect which would obliterate one portion of the contract in order to enforce another part thereof . . . .

*Burdon Cent. Sugar Refining Co. v. Payne*, 167 U.S. 127, 142 (1897). *See American Roll-On Roll-Off Carrier, LLC v. P & O Ports Baltimore, Inc.*, 479 F.3d 288, 293 (4th Cir. 2007) (contracts should be interpreted as so to give effect to each provision of the contract).

As the Eleventh Circuit squarely ruled, the oral amendment to the plea agreement bound this district "*only*" insofar as it agreed not to prosecute Al-Arian for crimes known to us at the time of the plea. *Al-Arian*, 514 F.3d at 1193, n. 4 (emphasis added). That provision would be rendered meaningless, however, by an interpretation of the agreement to bar this district from compelling his testimony on the grounds that it ended all business between Al-Arian and the government; as a result, such an interpretation must be rejected.

As EAUSA Zitek stated to Judge Moody, the existence of an agreement to bar this district from compelling Al-Arian testimony was something the defense simply made up:

> And the second point here is what about EDVA? This plea agreement specifically bound only the Middle District of Florida and the Counter-Terrorism Section.

-11-

> Because Defendant Al-Arian was concerned about being prosecuted anywhere else, we reached out and we got the concession from the Eastern District of Virginia that he would not be subject to a prosecution there.
>
> How the defendant then can claim that, as they put in their papers, that agreement by EDVA not to prosecute included an agreement not to subpoena him, not to compel him to testify, not to hold him on a material-witness warrant, all the stuff that they have put in their pleadings - - you know, you're not talking about something that's ambiguous. ***You're just talking about stuff they're making up as they go along to suit their purpose***.

*Id.* at 24-25(emphasis added). In light of the explicit oral promise to bar prosecution in this district - - amending the explicit written provision that no federal prosecutors were bound by the agreement outside of MDFL and the Counterterrorism Section - - the plea agreement cannot reasonably be interpreted to include an oral promise barring this district from seeking Al-Arian's compelled testimony.

<div align="center">

4.      The Prosecutors Unequivocally
<u>Deny Making the Promise at Issue</u>

</div>

Not only was the extraordinary oral promise alleged by Al-Arian inconsistent with the recorded provisions of the plea agreement and ignored at the hearing before Judge McCoun, the prosecutors unequivocally deny making it. In Mr. Zitek's words, "nobody said that." 11/6/06 Tr. 21. Judge Moody received that representation from EAUSA Zitek in 2006, and, upon our further inquiry, we reaffirmed it to this Court this year.

These representations to Judge Moody and to this Court should be considered in the same light as declarations or affidavits. "Attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath."

<div align="center">

-12-

</div>

*Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) (internal quotations and citations omitted). These denials of the existence of the extraordinary promise alleged by Al-Arian refute his oft-repeated characterization of the evidence in support of his claim as "uncontradicted" or "uncontroverted."  Al-Arian's Memo at 11, 13, 15.  Moreover, they are consistent with the record and common experience.

> 5.     Al-Arian Fails to Identify the Individual
> <u>Who Allegedly Made the Promise at Issue</u>

Since October 2006, Al-Arian has claimed that the government induced his guilty plea by orally promising that the agreement would end his business with the United States.  And yet, notwithstanding the extraordinary nature of the promise that allegedly was made but never reduced to writing - - and notwithstanding that it was never mentioned when Judge McCoun repeatedly inquired about inducements for the guilty plea - - Al-Arian cannot even to this day identify the person who allegedly made it.  Nowhere in the declarations of Al-Arian, Ms. Moreno, Mr. Moffitt, or Mr. Fernandez submitted since October 2006, is the individual identified who allegedly made the key promise.  Even now, in his motion to dismiss filed 30 months later, he still fails to identify any specific person who allegedly made such a promise.  That failure - - even today - - dramatically undercuts any argument that such a promise was actually made.

The Court also should recognize that it has no evidence from Mr. Fernandez, Mr. Fugate, or Mr. Gaugush - - all of whom appeared with Al-Arian before Judge McCoun to change his plea - - regarding the promise that is alleged to have been so important to Al-Arian.  The silence of these individuals with respect to this issue is striking, because by February 2006, both Mr. Moffitt and Ms. Moreno had moved to withdraw from representation of Al-Arian, and Mr.

-13-

Fernandez and Mr. Fugate were recruited by the MDFL court "to assist the parties in determining whether a plea agreement could be reached." *See* Exhibit C to Al-Arian's Memo; 4/14/06 Tr. 8, 35, 45.[8] Further, it is not as if Al-Arian was unable to obtain a declaration from Mr. Fernandez, for he did so and submitted it; the declaration simply did not touch on any of the plea negotiations in which Mr. Fernandez was actually involved.

In light of the undisputed facts that (1) no provision in the plea agreement barred this district from compelling Al-Arian's testimony; (2) the parties explicitly agreed that the written agreement, as orally modified at the hearing before Judge McCoun, contained the entire agreement; (3) neither Al-Arian nor his lawyers mentioned the existence of any side agreement to bar this district from compelling his testimony when asked by Magistrate Judge McCoun about the existence of any side agreements; (4) the oral amendment to the plea agreement barring this district from prosecuting Al-Arian on the basis of any facts then known to us would be superfluous if the parties actually had agreed to end "all of the government's business" with him; (5) EAUSA Zitek unequivocally represented to Judge Moody that there was no agreement to bar this district from compelling Al-Arian's testimony; (6) the prosecutors in this district unequivocally represented that, based an investigation conducted by this district, there was no such agreement; and (7) despite the extraordinary nature of the promise that Al-Arian alleges to have been made to him, he has to this day failed to identify the person who allegedly made such a

---

[8] The Court should recognize that Mr. Moffitt withdrew from representing Al-Arian more than a month before Al-Arian appeared before Judge McCoun to change his plea; Mr. Moffitt neither signed the plea agreement nor appeared in Court when it was entered. The docket sheet reflects that Mr. Moffitt moved to withdraw from the case on January 20, 2006 - - in part because of irreconcilable conflicts with his client - - and was allowed to withdraw on March 3, 2006. While Ms. Moreno also moved to withdraw from the case in January 2006, her withdrawal was not granted until after sentencing.

-14-

promise to him; this Court should reach the same conclusion that previously was reached by Judge Moody, Judge Lee, the Fourth Circuit, and the Eleventh Circuit: the plea agreement simply did not include any provision that barred this district from compelling Al-Arian's testimony.

<div align="center">

C. *Santobello* Provides Al-Arian No Relief Now

</div>

Al-Arian claims that the orders to testify were invalid because the government "committed a *Santobello* violation" by seeking his compelled testimony in violation of a promise that was allegedly made in Florida to "end all of the Department of Justice's dealings" with him. Al-Arian's Memo, at 15.  Al-Arian's *Santobello* claim can provide him no relief now, however, because as noted above, no such promise was made to him.  Moreover, this claim already was litigated and decided against him.  On that basis, alone, *Santobello* is inapplicable to this case.

<div align="center">

1. The *Santobello* Claim Has Already Been Decided

</div>

Al-Arian argued to Judge Lee in 2006 that *Santobello* barred the government from compelling his testimony.  *See* Document #4 filed pursuant to the Order of July 27, 2008.  Later that month, he expressly relied on *Santobello* in his motion filed in Florida to enforce his plea agreement.  *See* Document #9 filed pursuant to the Order of July 27, 2008.

In March 2007, Al-Arian relied on *Santobello* in his appeal to the Fourth Circuit.[9] Indeed, after that appeal was denied, he expressly relied on *Santobello* in his petition for rehearing *en banc*.[10]  Further, in his appeal to the Eleventh Circuit, Al-Arian again expressly

---

[9]  *See* Exhibits B and C to the government's pleading of March 4, 2006, "Government's Response to Outstanding Discovery Matter."

[10]  *See* Exhibit D to the government's pleading of March 4, 2006.

relied on *Santobello*.[11]  In its decision, the Eleventh Circuit discussed *Santobello* at length, and concluded that it had jurisdiction to consider Al-Arian's appeal *because* his cause of action was framed as a *Santobello* claim.  *Al-Arian*, 514 F.3d at 1190-91.  Ultimately, the Eleventh Circuit rejected the *Santobello* claim, ruling that, in light of the plea agreement and the plea hearing, "we cannot conclude that Al-Arian reasonably believed that he would forever be immune from all grand jury subpoenas originating from any federal prosecutor's office."  *Id.* at 1193.

Finally, in petitioning the Supreme Court for *certiorari*, the defendant continued to rely on *Santobello*.  *See* 2008 WL 3165821.  In sum, the defendant has had the opportunity to litigate the so-called *"Santobello* issue" before at least *eight* different federal judges.

> 2.   The Rejection of the *Santobello* Claims by the Fourth and <u>Eleventh Circuits Bar This Court from Revisiting the Issue</u>

The decisions of the Fourth and Eleventh Circuits preclude Al-Arian from relitigating the *Santobello* claim here.  "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Montana v. United States*, 440 U.S. 147, 153 (1979).  Issue preclusion bars re-litigation now of those legal and factual issues that were actually and necessarily determined by Judge Lee and Judge Moody, as well as by the Fourth and Eleventh Circuits.  These include the conclusions that the government did not breach the plea agreement by compelling Al-Arian to testify.

---

[11]  *See* Exhibit A to the government's pleading of March 4, 2006.

a. The Ruling of the Fourth Circuit in the Civil
Contempt Context Has the Same Preclusive Effect as
the Ruling of the Eleventh Circuit in the Criminal Context

The *Santobello* issue was addressed in Florida upon a motion made in the criminal case in which Al-Arian was indicted, went to trial, pled guilty, and was sentenced. There is no reason to conclude, therefore, that the procedural context of his motion to enforce his plea agreement in Florida was such that the results of that litigation lack preclusive effect here.

In any event, judicial determinations in civil contempt cases have preclusive effect on subsequent criminal contempt prosecutions. After all, as this Court previously determined, a criminal contempt charge for a recalcitrant witness already found in civil contempt does not ripen until after the witness has exhausted his appellate remedies against the civil contempt. Memorandum Opinion, August 14, 2008, at 9. In particular, this Court wrote that Al-Arian had the right to pursue his *Santobello* claims to the appellate courts before he could be prosecuted for criminal contempt for his refusal to testify. *Id.* at 8-10. Accordingly, the determinations of the Fourth and Eleventh Circuits with respect to Al-Arian's *Santobello* claims mean that he *lost* when he "rolled the dice under *Ryan*" and appealed from the decisions of Judge Moody and Judge Lee. *Id*. at 11. For those losses to mean that Al-Arian risked anything when he "rolled the dice under *Ryan*," they must have preclusive effect now - - regardless of the fact that the Fourth Circuit's decision arose in a civil case while the Eleventh Circuit's arose in a criminal one.

A civil contempt finding's preclusive effect in a subsequent criminal case also is demonstrated by *United States v. Pearce*, 792 F.2d 397 (3rd Cir. 1986), involving a defendant (Pearce) charged with criminal contempt for disobeying an order to testify. Like Al-Arian does now, Pearce sought to challenge the validity of the order on the basis of his claim that his plea

agreement barred the government from seeking his compelled testimony. The Third Circuit ruled

that Pearce was entitled to challenge the validity of the order as a pre-trial motion in his criminal

case, but only because - - unlike Al-Arian - - he had not previously been held in civil contempt

for his refusal to testify and, therefore, never had the opportunity to appeal the rejection of that

argument before. *Id.* at 399. As the Third Circuit explained:

> The rule is that when an order is appealable, and one foregoes the appeal,
> he may not raise the validity of the order at a subsequent contempt trial;
> however, if the order is not appealable, and compliance with it will bring
> irreparable harm, the individual has the option of disobeying the order and
> raising its invalidity as a defense in subsequent contempt proceedings.

*Id*. at 400.

Accordingly, Pearce was entitled to raise the invalidity of the order as a legal defense

when he was indicted for criminal contempt because he had had no prior opportunity to appeal its

validity. On the other hand, if Pearce previously had been held in civil contempt (as was Al-

Arian), then he would have been barred from raising that argument as a legal defense in a

subsequent criminal proceeding (as Al-Arian now is barred) because he would have *had* a prior

opportunity in the civil proceeding to appeal its validity. The fact that the argument would have

been made in a prior proceeding that was for *civil* contempt, however, is irrelevant to the

preclusive effect of the prior ruling on the subsequent criminal proceeding. *See also United*

*States v. Gray*, 91 F.3d 135 (Table), 1996 WL 397417 *3 (4th Cir. 1996) (affirming the denial of

a motion to suppress the fruits of a wiretap in a criminal case on the grounds that the wiretap had

been held to be lawful in a prior appeal from a finding of civil contempt).

In essence, a finding of an order's validity in the context of civil contempt has preclusive

effect in a subsequent criminal contempt prosecution. *See United States v. Mourad*, 289 F.3d

-18-

174, 177 (1st Cir. 2002) (a party may not violate an order and challenge its validity collaterally as a defense in the criminal contempt proceeding).  Accordingly, the Eleventh Circuit's denial of Al-Arian's appeal was conclusive with respect to his claim that compelling his testimony in Virginia breached his Florida plea agreement - - despite his argument that the agreement was intended to end his business with the government.

        b.     This Court Already Has Recognized the
               Preclusive Effect of the Prior Rulings

In July 2008, the defendant moved to dismiss the indictment on the grounds that his plea agreement in Florida barred the government from compelling his grand jury testimony here.  On August 8, 2008, this Court deferred resolution of that motion pending the Supreme Court's consideration of the defendant's petition for *certiorari* from the Eleventh Circuit's decision.  In doing so, however, this Court recognized that the defendant's *Santobello* claim already had been raised before Judge Moody and the Eleventh Circuit:

> Al-Arian refused to answer any questions, arguing that the 2006 plea agreement protected him from having to testify before the grand jury or cooperate with any federal criminal investigation into affairs that were the subject of his Florida conviction.  **Al-Arian had an absolute right to litigate that contention.  *See Santobello v. New York*, 404 U.S. 257, 262 (1971)** ("[W]hen a plea rests in any significant degree on a promise . . . of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

Memorandum Opinion, August 14, 2008, at 9 (emphasis added).

On January 16, 2009, after the Supreme Court denied Al-Arian's petition, this Court recapitulated the sequence of events to that point, and concluded that the Eleventh Circuit's decision "put to rest" the issue of whether the plea bargain barred the government from seeking to compel the defendant's testimony.  1/16/09 Tr. 2.  Accordingly, this Court denied defendant's

motion to quash the indictment as barred by the plea agreement, on the grounds that "there is

nothing in this record that would indicate that the United States attorney for this district was

barred or prohibited by the plea agreement in Florida from bringing this action." *Id*. at 4.

Finally, this Court squarely stated that the plea bargain had been adequately litigated "all

the way to the Supreme Court of the United States":

> Motion No. 20, a motion for a hearing on the meaning and application of
> the 2006 plea agreement, is in my view unnecessary and moot and will be
> denied. The plea agreement is what it is. It's been adequately litigated.
> It's gone all the way to the Supreme Court of the United States. We're not
> going to get into that. It was a different court, a different jurisdiction.

*Id*. at 5. In declaring that the plea agreement already had been "adequately litigated," this Court

got it exactly right: the decisions of the Fourth and Eleventh Circuits are the law of the case on

the issue of the plea agreement and any violation thereof.

<div align="center">c.    <u>No New Evidence Exists to Undercut the Prior Rulings</u></div>

Despite the facts that (1) the Eleventh Circuit squarely determined that the "clear,

unambiguous" terms of the plea agreement did not "grant Al-Arian immunity from a future grand

jury subpoena," *Al-Arian*, 514 F.3d at 1194; (2) Al-Arian's *Santobello* claim has been rejected by

eight different federal judges; and (3) this Court itself  - - just three months ago - -  recognized

that the plea agreement's "meaning" had been "adequately litigated" "all the way to the Supreme

Court," Al-Arian now claims that "new evidence that was never given to the trial court in Tampa

or either the Eleventh or Fourth Circuits" not only justifies reconsideration of the *Santobello*

claim, but also definitively establishes a *Santobello* violation. Al-Arian's Memo at 8, 15-16, 20-

26. He is wrong.

As an initial matter, we note (once again) that the propriety of this Court's consideration of any "new evidence" about the contract has already been conclusively decided -- against Al-Arian. To explain: in Florida, Al-Arian specifically asked for an evidentiary hearing, but it was denied. 11/6/06 Tr. 8, 15, 16-17. On appeal, Al-Arian specifically claimed error with regard to this denial, arguing that Judge Moody abused his discretion by refusing to conduct a hearing to consider evidence of the oral promise he alleged the government made.[12] This claim was rejected when the Eleventh Circuit affirmed Judge Moody's decision. Thus, just as this Court is barred from reconsidering Al-Arian's *Santobello* claim on the merits, it is similarly barred from revisiting his procedural argument - - already rejected by the Eleventh Circuit - - that his evidence of the alleged oral promise should be considered in resolving his renewed *Santobello* claim. After all, if he was not entitled to a hearing to present his evidence of the oral promise in the first place, it simply does not matter that he now has two new declarations containing what his former lawyers would say at such a hearing.

At any rate, the "new evidence" to which Al-Arian points is not "new," anyway. The bulk of his proffered "new evidence" emanates from the declarations he and his attorneys have filed. He claims that this "uncontroverted evidence" shows that "the government induced his 2006 plea agreement by promising that the plea would end all his dealings with the Department of Justice." Al-Arian's Memo at 20. As we have already shown, however, this evidence not only is most certainly "*con*troverted," but it also flies in the face of the agreement's express terms and common practice. In any event, the sum and substance of this allegedly "new" evidence is that his attorneys understood that he would never "be forced to cooperate under the

---

[12] *See* Exhibit A to the government's pleading of March 4, 2006, at 21-27.

plea agreement" - - but that understanding, of course, clearly was presented to Judge Moody in 2006. *See* Al-Arian's Memo at 11-12. That evidence, however, did not convince Judge Moody that he should look beyond the plea's documented terms or that the government had somehow breached any aspect of the plea agreement. And, of course, the Eleventh Circuit affirmed.

Moreover, the facts contained in the declarations from Mr. Moffitt and Ms. Moreno submitted in 2009 were all available to Al-Arian when he first made his claims in 2006. He is not entitled to relitigation of the same issue simply because he provided this Court with facts now that he could have provided to Judge Moody then; if he wanted a court to consider that evidence, he was required to submit it the first time around. After all, collateral estoppel forecloses "the relitigation of issues of *fact or law* that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Ramsay v. U.S.I.N.S.,* 14 F.3d 206, 210 (4th Cir. 1994) (emphasis added). *See Matter of Schmidt,* 775 F.2d 822 (7th Cir. 1985) (any defense not presented upon a motion to hold a witness in contempt for failure to testify "is lost forever").

Al-Arian's opportunity to litigate the *Santobello* issue was in 2006, in Florida, under the parameters that Judge Moody placed on that opportunity.[13] His presentation now of evidence that he failed to provide to Judge Moody then does not entitle him to obtain another look at his arguments now. *See also In re Fowlkes*, 326 F.3d 542 (4th Cir. 2003) (Gregory, concurring) ("the

---

[13] Al-Arian challenged the propriety of those parameters, but his appeal was rejected by the Eleventh Circuit. Regardless of what this Court would have done in Judge Moody's place in November 2006 with respect to Al-Arian's motion for an evidentiary hearing to consider parole evidence, the Eleventh Circuit's decision is controlling.

new affidavits do not render the claims previously adjudicated 'new' for purposes of claim preclusion" because the "mere offering of new evidence in support of the same theory cannot relieve Petitioner of the effects of res judicata").

While the new declarations from Attorneys Moffitt and Moreno do not constitute "new evidence" for purposes of undercutting the preclusive effect of the prior rulings, neither do the representations to this Court made by the prosecutors.  First - - and most obviously - - the government's representations simply reiterated the evidence already in the record from EAUSA Zitek, that the government did not promise Al-Arian that he could not be compelled to testify in Virginia.  The fact that this district reiterated in 2009 the representations that Mr. Zitek previously made in 2006 cannot constitute "new evidence" that would undercut the preclusive effect of the prior findings.

At any rate, the government's representations regarding its internal communications - - by definition - - could not have affected the determination of whether Al-Arian was promised that his testimony could not be compelled in this district.  Further, Al-Arian's subjective understanding of the provisions of his plea agreement could not have been affected by internal government discussions to which he was not privy.  As a result, no communications between government attorneys that were *not* shared with Al-Arian could affect this Court's consideration of whether Al-Arian was misled in the plea negotiations.  Accordingly, no "new evidence" exists that would undercut the preclusive effect of the prior rulings by Judge Moody, Judge Lee, the Fourth Circuit, and the Eleventh Circuit.

-23-

### 2. No *Santobello* Violation Was Committed

Notwithstanding the collateral bar on relitigating the *Santobello* claim, no *Santobello*

violation was committed. As explained above, Al-Arian was not promised that he would be

immune from compelled testimony in the future. Further, there is no evidence or indication that

prosecutors in Florida, Virginia, or the DOJ acted in bad faith in negotiating the plea. To the

contrary, the evidence shows that no prosecutor equated cooperation with compelled testimony,

and none believed that Al-Arian or his attorneys thought that his plea immunized him from

compelled testimony. Moreover, the plea agreement was signed before this district applied to

DOJ for immunity and before any of the prosecutors involved in the plea negotiations even knew

of the application.

Further, the evidence shows that the prosecutors in Florida had no involvement in this

district's decision to seek immunity for Al-Arian, and even opposed the request when its views

were solicited in April 2006.[14] The Florida and DOJ attorneys expected the defendant to receive

a sentence that effectively resulted in "time-served," followed by no action by the United States

that might delay his removal from the country, in light of the plea agreement's obligation for

DOJ to recommend Al-Arian's expedited removal upon the completion of a criminal sentence.

*See* Attachment C to Al-Arian's Memo, at § 4.[15]

---

[14] Al-Arian suggests that denial of the immunity application was because the Florida prosecutors thought such information might derail the plea agreement. Al-Arian's Memo at 4, n. 5. The more sensible interpretation, however, is that prosecutors thought that this district's attempt to obtain compelled testimony would violate the expeditious deportation language triggered by what they expected to be a sentence to time-served.

[15] Al-Arian argues that it is implausible for the government to suggest that the prosecutors expected Al-Arian to receive a sentence to time-served, because even if his sentence had been only 46 months, it "would not have been completed until June or July 2006, more than

-24-

Ultimately, the sentencing occurred on May 1, 2006, instead of in late June or July as originally expected. Moreover, Judge Moody sentenced the defendant to 57 months in prison rather than to only 46 months, as recommended by the parties. It was those intervening events - - the imposition nearly two months earlier than expected, of a sentence 11 months longer than what was expected - - that provided the window of opportunity for this district to compel the defendant's testimony without conflicting with the plea agreement's provision for expedited removal upon completion of his criminal sentence. Indeed, this district's application to DOJ for authority to seek Al-Arian's compelled testimony was not even granted until after Judge Moody sentenced Al-Arian to significantly more time than the parties expected.

In sum, no one in this district had any input into the terms of the defendant's agreement in Florida. The individuals who negotiated the agreement in Florida did not do so with "winks and nods," *see* 2/5/09 Tr. 23, to thwart any expectations that Al-Arian may have had that he would not be compelled to testify in this district. The government negotiators never "made any statement -- oral or written -- that could be construed as" a "promise" that his testimony would not be compelled. *In re Altro*, 180 F.3d 372, 376 (2d Cir. 1999). To the contrary, they negotiated an agreement expected to achieve a just result while simultaneously satisfying the defendant's stated desires to conclude his prosecution and leave the country by arranging for his

---

a month after his May 1, 2006 sentencing." Al-Arian's Memo at 23, n.14. This argument is undercut by his own evidence, because Attorney Fernandez declared that, at a meeting on April 12, 2006, the prosecutors "expressed their confidence" to the defense attorneys that Al-Arian "would complete his sentence by June 1, 2006 and be deported from the U.S. shortly thereafter." Exhibit C to Al-Arian's Memo, at § 4. Further, it was five days *after* that meeting that Judge Moody moved the sentencing up to May 1, 2006. *See* Docket Item 1558. To the extent the parties expected the sentencing to follow the plea by at least 45 days (instead of only 14 days), then - - according to the facts in Mr. Fernandez's declaration - - it hardly could be implausible for the government to have expected a time-served sentence by June 1, 2006.

expeditious removal and protecting him from prosecution in Virginia.  The fact that their

agreement did not satisfy the defendant was the result of Judge Moody's sentencing and not any

plan by the government negotiators.

There simply is nothing in the record to indicate that any misunderstanding of the plea

agreement by the defendant was based on any government misrepresentation.  In light of these

facts, the declarations submitted by Al-Arian establish - - at most - - that Al-Arian and his

attorneys misunderstood the agreement to contain a provision that did not exist and a promise

that was not made.  Such a misunderstanding does not merit relief under *Santobello*.

In *In re Altro,* 180 F.3d 372 (2d Cir. 1999), the Second Circuit considered a similar

situation, where a witness claimed that he had been promised in his plea agreement that he would

not be compelled to testify.  There, too, the government negotiators  never "made any statement

-- oral or written -- that could be construed as" a no-subpoena "promise."  *Id*. at 376.  The

Second Circuit concluded that, "in the absence of such a promise, it is irrelevant whether Altro

plausibly could have believed that he would be exempt from testifying, because any such

unilateral understanding would be insufficient to supplement the terms of the written plea

agreement."  *Id.*

Ultimately, the Second Circuit held that, in the face of an "integration clause" limiting the

scope of a plea agreement, a defendant may not rely on a purported implicit understanding to

demonstrate that the government was in breach of a plea agreement:

> Accordingly, we hold that, especially where - as here - the Government
> incorporates into the plea agreement an integration clause expressly
> disavowing the existence of any understandings other than those set forth
> in the plea agreement, a defendant may not rely on a purported implicit
> understanding in order to demonstrate that the Government is in breach.

*Id*.

A similar result was reached in *In re Grand Jury Proceedings (Perdue)*, 819 F.2d 984

(11th Cir. 1987), the precedent upon which the Eleventh Circuit relied to affirm Judge Moody's

denial of Al-Arian's motion to enforce his plea agreement. *Al-Arian*, 514 F.3d at 1191-92. In

*Perdue*, the defendant argued that *Santobello* precluded the government from compelling his

testimony because, in connection with his plea agreement, he was orally promised that he would

not have to testify. *Perdue*, 819 F.2d at 986. Nevertheless, the Eleventh Circuit ruled that the

plea agreement did not preclude the government from compelling the defendant to testify, even if

the defendant was at least unintentionally misled by the government into thinking that his plea

agreement meant a longer sentence, but no testimony.[16]

Thus, in essence, Perdue – like Al-Arian – argued that the government had "misled" him

into believing that all of his business with the government would be done if he accepted the plea

offer. Indeed, the Eleventh Circuit agreed that it was quite possible that the government had - -

at least "unintentionally" - - misled the defendant into believing that he would be done with the

government upon his plea. Nevertheless, the Eleventh Circuit declined to find a *Santobello*

violation in light of the fact that the "agreement, which details a number of reservations of rights

by both Perdue and the government, simply does not contain any mention of future testimony,

whether voluntary or compelled." *Id.* at 987. Thus, in light of the "unambiguous" "words of the

agreement," the Eleventh Circuit refused to "rewrite the agreement to include a bar on attempts

by the government to compel testimony by Perdue." *Id.*

---

[16] Unlike the defendant in *Perdue* (and, for that matter, the defendant in *Garcia*, 956 F.2d 41, *supra*), Al-Arian did not choose a plea agreement that provided for a heavier sentence - - but no "cooperation" - - instead of one that provided for a lighter sentence - - but with "cooperation." After all, even with the plea agreement that did not require cooperation, the government agreed to recommend a sentence that was expected to be time-served.

As the Eleventh Circuit already found, "[t]his case falls squarely within *Perdue* and *Altro*." *Al-Arian*, 514 F.3d at 1192. As in *Altro* and in *Perdue*, the plea agreement did not contain a promise that Al-Arian would be exempt from orders to compel his testimony. As in *Altro* and *Perdue*, the plea agreement did contain an integration clause. Accordingly, as in *Altro* and *Perdue*, the defendant here may not rely on a purported implicit understanding to demonstrate that the government breached his plea agreement.

As the Eleventh Circuit already wrote about Al-Arian's *Santobello* claim, "[i]n this case, like *Perdue,* there is a clear conflict between Al-Arian's understanding of the plea agreement versus the government's understanding of it." *Al-Arian*, 514 F.3d at 1193. The Eleventh Circuit concluded, however:

> [A]s we stated in *Perdue,* even "where the government arguably misled [Al-Arian], and where [Al-Arian] plausibly misunderstood the plea agreement, we cannot enforce an agreement that was never agreed on with specificity." *Id.* at 987. As we have explained, the plea agreement reflects no agreement between Al-Arian and the government that Al-Arian could not be compelled to give grand jury testimony. Consequently, we hold that the written plea agreement between Al-Arian and the government does not prevent the government from issuing a subpoena to Al-Arian requiring him to testify before a grand jury.

*Al-Arian*, 514 F.3d at 1193.

As noted above, the Fourth Circuit has already ruled that Al-Arian's plea agreement should be interpreted in accordance with the law of the Eleventh Circuit and the proceedings there. *In re Grand Jury Subpoena*, 221 Fed.Appx. at 251. Al-Arian has raised nothing material in this Court that was not already considered by the Eleventh Circuit. As a result, it remains the law that, even if he was misled - - which we do *not* concede - - and even if he misunderstood his

plea agreement, the agreement did not prevent this district from requiring him to testify before the grand jury. Accordingly, the Eleventh Circuit's ruling is controlling.

In hindsight, to the extent a misunderstanding actually occurred, there are many ways that it might have been avoided - - not the least of which was the defense raising the alleged promise when Magistrate Judge McCoun repeatedly asked Al-Arian and his attorneys to put on the record any promises or inducements that he received outside of the written plea agreement. That being said, it also might have been avoided had the prosecutors thought to remind the defense of what the agreement did *not* provide. Such a lack of such foresight, however, does not come close to establishing a *Santobello* violation. After all, there is no legal or ethical requirement to advise defense attorneys of what an agreement does *not* provide; as the Second Circuit held, "[w]e decline to require the Government to anticipate and expressly disavow every potential term that a defendant might believe to be implicit in such an agreement." *Altro*, 180 F.3d at 376.

Futher, a prosecutor's interest in ensuring that justice is done does not extend to assisting defendants in making strategic choices about whether to plead guilty. The imposition of such a duty would "displace the adversary system" and "would entirely alter the character and balance of our present systems of criminal justice." *United States v. Bagley*, 473 U.S. 667, 675 & n.7 (1985) (*Brady* does not require the prosecutor "to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial"). Accordingly, *Santobello* does not "place an affirmative duty on the prosecution to discuss all possible ramifications of a defendant's guilty plea." *United States v. Jordan*, 870 F.2d 1310, 1316 (7th Cir. 1989). *See United States v. Ruiz*, 536 U.S. 622, 631 (2002) (due process considerations do not require the prosecution to disclose material

-29-

impeachment information prior to entering into a plea agreement with the defendant); *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) ("The Constitution does not contemplate that prisoners shall be dependent upon government agents for legal counsel and aid, however conscientious and able those agents may be").

It is unfortunate if a misunderstanding actually occurred in this case, and the defendant actually was advised by his attorneys that - - in spite of the written terms of his agreement and the statements made to Judge McCoun in open court - - his plea agreement barred this district from compelling his testimony. There were, after all, numerous attorneys negotiating on behalf of Al-Arian during January and February 2006, at least including Mr. Moffitt, Ms. Moreno, Mr. Fernandez, and Mr. Fugate. Pursuant to those negotiations, they contacted many different government officials, both in Florida and Washington, D.C. According to Mr. Moffitt, for example, before he withdrew from the case, he himself negotiated with Assistant Attorney General Fisher, United States Attorney Perez, Ms. Krigsman, Mr. Zitek, and Mr. Furr. Al-Arian's Memo, Exhibit A. Under such circumstances - - when at least four defense attorneys engaged in negotiations with at least five government officials over a two-month period in two different cities - - it is no mystery why courts attempting to discern the final agreement of the parties resort to the document that the parties themselves execute as its embodiment. Similarly, it is no mystery why Fed.R.Crim.P. 11 requires courts to ask defendants seeking to plead guilty the questions that Judge McCoun asked Al-Arian and his lawyers on April 14, 2006, to ensure that all promises are put on the record *before* a plea agreement is accepted.

   D.  Even a *Santobello* Violation in Connection with the Negotiations in
      <u>Florida Would Not Bar Prosecution for Criminal Contempt in Virginia</u>

  The crux of Al-Arian's argument is that, because the government committed a *Santobello*

violation by seeking his compelled testimony in violation of a promise in the plea agreement not

to do so, Judge Lee's compulsion orders were invalid.  Al-Arian's Memo, at 15-16.  Notwith-

standing our main point that there was no *Santobello* violation - - because no such promise was

made - - it would not matter if there was, because the remedy for a *Santobello* violation in

connection with Al-Arian's plea agreement in Florida has nothing to do with his culpability for

refusing to obey Judge Lee's orders in Virginia.  Moreover, the validity of Judge Lee's orders are

irrelevant to Al-Arian's culpability for violating them, because he already had an opportunity to

challenge them on appeal.

    1.  Even if a *Santobello* Claim Had Merit, the
      <u>Remedy Would Not be Dismissal of the Indictment</u>

  Even if the government had promised Al-Arian that he would forever be exempt from

compelled testimony, his remedy might be rescission of his guilty plea, but not dismissal of the

indictment.  If, back in 2006, Al-Arian had convinced Judge Moody that compelling his

testimony constituted a breach of his plea agreement, then the remedy for such a breach might

also have been specific performance of the promise that he would be exempt from compelled

testimony.  *See Puckett*, 2009 WL 763354 *6 (U.S. March 25, 2009) (recognizing that, in

*Santobello*, the remedy for the government's failure to meet its obligations under a plea bargain

was specific performance rather than rescission).

  The fact remains, however, that Al-Arian failed to convince Judge Moody that

compelling his testimony constituted a breach, and he was ordered to testify by Judge Lee but

refused.  It is his refusal to obey those orders with which he is now charged.  Neither rescission

of the plea agreement, nor specific performance of the alleged promise not to compel his

testimony, affects his criminal culpability for already having disobeyed those orders.  Thus, even

if this Court were to conclude that the government had promised him that he would not have to

testify as an inducement for his guilty plea in Florida in 2006, specific performance of that

promise for the future is irrelevant to his culpability for already violating Judge Lee's orders.

There simply is no authority for the proposition that Al-Arian is entitled to dismissal of

an indictment in Virginia for disobeying an order to testify here on the grounds that the

government obtained the order in violation of his plea agreement in Florida.  As the Seventh

Circuit wrote in a virtually identical context, any promise made to Al-Arian in Florida might

entitle him to seek enforcement of his plea agreement in Florida, but not to disobey the Court's

orders to testify in Virginia:

> Even assuming arguendo that the government breached the plea
> agreement, this breach would not, as Simmons implies, authorize
> him to refuse the court's order to testify.  Instead, Simmons should
> have testified before the court and then brought an action against
> the government to enforce the terms of the plea agreement.

*United States v. Simmons*, 215 F.3d 737, 741 (7th Cir. 2000).  Accordingly, the only remedy

available to Al-Arian is rescission of his guilty plea - - and that, of course, must be undertaken

before Judge Moody.  *In re Grand Jury Proceedings (Perdue)*, 819 F.2d at 987 (Tjoflat,

concurring) (although the prosecutors in Florida were not bound by the plea agreement reached

with the prosecutors in Georgia, Perdue's remedy for the attempt to compel his testimony in

Florida was to move the judge who took his guilty plea in Georgia to set aside his conviction).

*Accord Garcia*, 956 F.2d at 45 (characterizing as "apt" Judge Tjoflat's suggestion that the

defendant seek to withdraw his plea through a § 2255 action in the district where he had been

convicted).[17]

<div align="center">

2.     The Validity of Judge Lee's Orders Is Irrelevant
to Al-Arian's Obligation to Comply With Them

</div>

The invalidity of a court order is generally no defense to a criminal contempt charge.

*United States v. United Mine Workers of America*, 330 U.S. 258 (1947).  "There is ample

authority for the proposition that if a court has jurisdiction, disobedience of an order of that court

subjects one to penalties for criminal contempt, even though the order may subsequently be

found to have been invalid."  *United States v. Hammond*, 419 F.2d 166, 168 (4th Cir. 1969).  *See*

*Walker v. Birmingham*, 388 U.S. 307 (1967) (invalidity of the trial court's order was no defense

to contempt for disobedience of that order even though the order affected constitutional rights).

The general rule that even invalid orders must be obeyed until they are set aside

sometimes has an exception for orders that require a witness to testify.  *Maness v. Meyers*, 419

U.S. 449, 458-59 (1975); *United States v. Ryan*, 402 U.S. 530, 532-33 (1971).  That exception,

however, does not apply where - - as here - - a defendant charged with criminal contempt

previously had the opportunity to appeal the validity of the order when found in civil contempt.

*Harris v. City of Philadelphia*, 47 F.3d 1333, 1338 (3d Cir. 1995); *Pearce*, 792 F.2d at 400.

In some cases, a criminal contempt defendant's first opportunity for appellate review of

the order he violated may be on the appeal of his conviction of criminal contempt.  Thus, in those

---

[17] *Garcia* arose in the context of an appeal of a denial of a 2255 motion.  *Garcia*, 956
F.2d at 42.  Although Al-Arian places great reliance on it, Al-Arian's Memo at 16-20, it is not
authority for the dismissal of an indictment for disobedience of an order to testify obtained in
violation of a plea agreement.  If anything, it stands for the proposition that Al-Arian's remedy
for the breach that he alleges must be obtained through the filing of a 2255 motion in Florida - -
which, of course, he already tried (albeit unsuccessfully).  *Al-Arian*, 514 F.3d at 1191.

cases, the validity of the order might be a legal defense to the criminal contempt charge. *City of Philadelphia,* 47 F.3d at 1338. Where a defendant was previously held in civil contempt for his refusal to testify, however, he already *had* an opportunity to appeal the validity of the immunity order; as a result, in such a case, the alleged invalidity of the order cannot be raised in the subsequent criminal prosecution as a defense to the contempt charges. *See* 15B Charles Alan Wright et al., *Federal Practice & Procedure* § 3914.23 ("if appeal is available from an order to allow access to information, the validity of the order will not be reviewed in a subsequent contempt proceeding"); *City of Philadelphia*, 47 F.3d at 1338; *Pearce*, 792 F.2d at 400.

In *City of Philadelphia*, the Third Circuit reiterated the rule that defendants who previously *were* held in civil contempt - - and thereby *did* have a prior opportunity to challenge the order - - were barred from later challenging the underlying order:

> It is true . . . that we will review the validity of the underlying order in a contempt proceeding when the underlying order was not previously appealable and compliance would result in irreparable harm. *See United States v. Pearce*, 792 F.2d 397, 400 (3d Cir.1986) (citing *Maness*, 419 U.S. at 460, 95 S.Ct. at 592, and *United States v. Ryan*, 402 U.S. 530, 532-33, 91 S.Ct. 1580, 1581-82, 29 L.Ed.2d 85 (1971)). However, even assuming that compliance would have resulted in irreparable harm, that exception is inapplicable here because the July 2, 1991 Order was previously appealable as an injunction under 28 U.S.C. § 1292(a)(1).

*City of Philadelphia*, 47 F.3d at 1338.

In *Pearce*, the Third Circuit explained that the "rule is that when an order is appealable, and one foregoes the appeal, he may not raise the validity of the order at a subsequent contempt trial." 792 F.2d at 400. *Accord In re Grand Jury Subpoena*, 190 F.3d 375, 382 n.8 (5th Cir. 1999). Thus, the availability of a challenge to the validity of the order as a legal defense in *Pearce* was dependent on the fact that Pearce had lacked the ability to challenge the order in a

-34-

prior proceeding because he was never first held in civil contempt.  Since Pearce lacked an

opportunity to appeal the compulsion order before he was criminally charged, he was entitled to

litigate its validity when he was indicted for criminal contempt.  792 F.2d at 400.  Here, however,

Judge Lee's orders *were* appealable when he held Al-Arian in civil contempt  - - and Al-Arian

appealed them on the very grounds upon which he relies now.  *In re Grand Jury Subpoena*, 221

Fed.Appx. 250.[18] As a result, Al-Arian cannot raise the validity of the orders now.

Before being indicted for criminal contempt, Al-Arian twice appealed the validity of the

orders compelling him to testify.  Having already appealed the validity of the orders when he was

held in civil contempt, he cannot challenge their validity again today.  Since he cannot challenge

their validity today, the crux of his argument in support of his motion to dismiss fails, and

whether the government promised him that he would not be subject to compelled testimony in

this district is irrelevant to his culpability for disobeying those orders.

II.     Al-Arian's Understanding of His Plea Agreement
        Is Irrelevant to the Requisite Willfulness for Conviction

Al-Arian argues that, as a result of his understanding of his plea agreement, the

indictment must be dismissed because the government cannot prove he acted "willfully."  Al-

Arian's Memo at 29.  The law is crystal clear, however, that a defendant's belief that his plea

agreement exempts him from having to comply with an order to testify is irrelevant to his guilt or

innocence for criminal contempt for willful disobedience of such an order.  *See*, *e.g.*, *Simmons*,

215 F.3d 737 (in a criminal contempt trial for refusal to comply with an order to testify, the

_____

[18]  While Al-Arian also appealed to the Eleventh Circuit, *Al-Arian*, 514 F.3d 1184, that
appeal encompassed only Judge Moody's determination of the meaning of Al-Arian's plea
agreement, and did not encompass the validity of Judge Lee's Orders.

district court properly excluded as irrelevant the defendant's allegation that the government

obtained the order compelling his testimony in breach of his plea agreement); *Pearce,* 792 F.2d

at 399 n.3 (a defendant's claim that the compulsion order violated the terms of his plea

agreement could not be mentioned to the jury considering whether he was guilty of criminal

contempt for refusing to testify).

As countless decisions explain, neither "good faith" nor "reliance on counsel" is a

defense against a criminal contempt charge for failing to obey an unambiguous court order. *See,*

*e.g.*, *United States v. Myers*, 302 Fed.Appx. 201 (4th Cir. 2008) (reliance on counsel not to appear

before the grand jury is no defense to criminal contempt);[19] *United States v. Underwood*, 880

F.2d 612 (1st Cir. 1989) (Breyer, J.) (refusal to testify before the grand jury was "willful" for

purposes of criminal contempt even though the defendant relied on counsel). In the months of

litigation since Al-Arian was indicted, no authority has been identified to the contrary. In

essence, Al-Arian "rolled the dice under *Ryan*," took two appeals*,* and lost both times. *See*

Memorandum Opinion, August 14, 2008, at 11. Having lost, he cannot still argue to the jury that

his disobedience was not willful because he acted in good faith; after all, if good faith reliance on

counsel negated willfulness, then he risked nothing when he "rolled the dice" under *Ryan.*

As the Fourth Circuit has repeatedly stated, "a volitional act done by one who knows or

should reasonably be aware that his conduct is wrongful" establishes that a criminal contempt

---

[19] Al-Arian suggests that the government cannot prove "willfulness" because he acted in
the good faith pursuit of a plausible but mistaken alternative. Al-Arian's Memo at 28. To the
contrary, there is no authority that a refusal to testify could constitute a plausible but mistaken
"good faith" alternative to compliance with an order to testify. *Myers*, 302 Fed.Appx. at 205
("[a]s our case law makes clear, *McMahon*, 104 F.3d at 642-45, this would only be a defense if
the subpoenas themselves were unclear").

was willful. *Nakell v. North Carolina*, 15 F.3d 319, 324 (4th Cir. 1994); *United States v. Warlick*, 742 F.2d 113, 117 (4th Cir. 1984); *United States v. Marx,* 553 F.2d 874, 876 (4th Cir.1977). Under this standard, Al-Arian's alleged reliance on his plea agreement is irrelevant to his guilt or innocence for disobeying the orders to testify, and no grounds for dismissal of the indictment.

III.    Dismissal of the Indictment Would Undermine
        the Integrity of the Court and the Legal Process

Al-Arian argues that the charges against him should be dismissed because proceeding on the indictment would undermine the integrity of the Court and the legal process. Al-Arian's Memo at 32. Proceeding to trial would do no such thing. Dismissal is an appropriate sanction only where government misconduct is "so outrageous as to shock the conscience of the court." *United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007). There is nothing in the record of this case to suggest *any* misconduct, much less anything that would shock the conscience of the Court. In any event, contrary to Al-Arian's argument, it is the *dismissal* of the indictment that would undermine the integrity of the Court and the legal process.

First, this Court already has stated that improper activity is not suspected of the United States Attorney's Office in this district. The Court should note, however, that even after MDFL prosecutors denied that the plea agreement included a bar on compelled testimony in Virginia, Al-Arian's own attorneys asserted to Judge Moody that they agreed that there was no impropriety by the Florida prosecutors, either. As Mr. Fernandez told Judge Moody on November 6, 2006:

> I agree with the United States Attorney's Office position here in that there
> has been no impropriety whatsoever performed in this district, none
> whatsoever. Most of us have worked with Mr. Zitek and Mr. Furr and, to
> a lighter extent, Miss Krigsman, who just walked in [to the courtroom],
> myself almost 15 years now; and in the course of negotiating this plea

agreement, there isn't one shred of improper activity on the part of the Government from this office.

11/6/06 Tr. 4-5.[20]  Further, Al-Arian's attorneys also stated that they saw no fault with

Counterterrorism Section Trial Attorney Krigsman.  As Linda Moreno wrote in her original

declaration, Ms. Krigsman is a woman of unassailable integrity.  *See* Exhibit A to Al-Arian's

Memo, at ¶ 3.  On this record, there simply is no trace of outrageous government conduct.

Second, dismissal cannot properly be predicated on a failure of the prosecutors to warn

Al-Arian before he entered his plea agreement that this district had applied for authority to

compel his testimony.  After all, they had no duty to disclose to him investigatory steps that were

under consideration by prosecutors in other districts.  Indeed, they would not have been required

to warn him even if they knew that another district planned actually to prosecute him rather than

merely to seek his compelled testimony.  *United States v. Posada Carriles*, 541 F.3d 344, 353

(5th Cir. 2008); *United States v. Stringer*, 535 F.3d 929 (9th Cir. 2008).

In *Stringer*, the Ninth Circuit considered the district court's dismissal of an indictment

grounded on the failure of the government to warn the defendant in the course of an investigation

by the Securities and Exchange Commission that the United States Attorney's Office was also

investigating him.  The Ninth Circuit reversed, holding that the failure to warn did not constitute

deception or misconduct.  "At most," the Ninth Circuit held, "there was a government decision

not to conduct the criminal investigation openly, a decision we hold the government was free to

make."  *Id.* at 933.

---

[20]  The MDFL prosecutors denied the existence of the alleged promise no later than November 1, 2006, in their pleading, "United States Response in Opposition to Defendant Al-Arian's Motion to Enforce Plea Agreement."  *See* Exhibit 16 in our response to this Court's Order of July 27, 2008.

The same result was reached in *Posada Carriles*, when the Fifth Circuit considered the district court's dismissal of charges brought against a reputed terrorist on the grounds that the government failed to disclose in an interview conducted in connection with an immigration application that the defendant's answers would be used to build a criminal case against him. The Fifth Circuit reversed, holding that, "while the government may not make affirmative material misrepresentations about the nature of its inquiry, it is under no general obligation of disclosure." *Id.* at 356-57. It explained that the "'mere failure' of a government official to warn that an investigation may result in criminal charges does not, absent affirmative misrepresentation, constitute fraud, deceit, or trickery." *Id.* at 355.

Indeed, the law is clear that a prosecutor has no duty to advise a defendant contemplating a guilty plea of another office's interest in him for further prosecution. *See United States v. Campusano*, 947 F.2d 1, 5 (1st Cir. 1991) ("we decline to hold that the state prosecutor made a misrepresentation by failing to disclose the possibility of a federal prosecution to appellant"); *Jordan*, 870 F.2d at 1316 ("In failing to advise Jordan of the possibility of federal prosecution, the State made no explicit promise or misrepresentation to Jordan. The issue was not misrepresented because it was not represented at all"). In short, there is no affirmative duty placed on prosecutors to disclose to a defendant the interest in him of other investigators - - and this is particularly so when the parties execute a plea agreement that explicitly exempts from its coverage those other investigators.

Here, of course, it was not notification of the likelihood of additional criminal charges that was not provided to Al-Arian - - as in *Posada Carriles*, *Stringer*, *Campusano*, and *Jordan* - - but merely that it was under consideration that his testimony might be sought *under immunity*.

-39-

Indeed, until Judge Moody sentenced him to 11 months more than the parties expected, this

district's interest in Al-Arian pertained only to a collateral and uncertain contingency, of which

he had no right to be made aware. *See Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)

(a defendant need not be made aware of the collateral consequences of his plea that are uncertain

or beyond the direct control of the court). Accordingly, any failure to disclose to Al-Arian that

this district was interested in compelling his testimony was not in any way improper.

More important, it is fundamental to American law that a "grand jury investigation is not

fully carried out until every available clue has been run down and all witnesses examined in

every proper way to find if a crime has been committed." *United States v. Calandra*, 414 U.S.

338, 344 (1974). Further, except for those protected by a constitutional, common-law, or

statutory privilege, the grand jury is entitled to every person's evidence. *Branzburg v. Hayes*,

408 U.S. 665, 688 (1972). Immunity is the Government's ultimate tool for securing testimony

that otherwise would be protected. *United States v. Mandujano*, 425 U.S. 564, 574-75 (1976).

The use of immunity orders to compel testimony from an acquitted defendant is perfectly proper.

*United States v. Benkahla*, 530 F.3d 300, 307 (4th Cir. 2008).

In his guilty plea, Al-Arian admitted that he illegally provided services to a designated

terrorist organization. In closing argument, his lawyer admitted that Al-Arian advised the most

senior officials in that organization. *See*, *e.g.*, 11/9/05 Tr. 26, 28.[21] At sentencing, Judge Moody

---

[21] The transcript was attached as an exhibit to the government's opposition to Al-Arian's
Motion to Quash Indictment Based on 2006 Plea Agreement that was filed in July 2008.

found not only that he was a leader of that organization, 5/5/06 Tr. 14,[22] but also that, in the

course of his leadership, he facilitated homicide bombings:

> And yet still, in the face of your own words, you continue to lie to your
> friends and supporters, claiming to abhor violence and to seek aid only for
> widows and orphans.
>
> Your only connection to widows and orphans is that you create them, even
> among the Palestinians; and you create them, not by sending your children
> to blow themselves out of existence. No. You exhort others to send their
> children.
>
> Your children attend the finest universities this country has to offer
> while you raise money to blow up the children of others.[23]
>
> You are indeed a master manipulator.

*Id*. at 16-17.[24]  In light of *these* facts, the government properly obtained a compulsion order and

placed him before the grand jury.

In essence, the grand jury had a right to find out from where Al-Arian obtained his

funding, and Al-Arian had the obligation to tell them. To avoid prosecution, Al-Arian only had

to testify truthfully pursuant to the Court's orders. He could have admitted to any crime and still

---

[22]  The transcript was attached as an exhibit to the government's Opposition to Al-Arian's
Motion for Release on Bond, filed on July 9, 2008.

[23]  Among "the children of others" blown up by Al-Arian's organization was Alisa
Flatow, a Brandeis University student from New Jersey. Her father, Stephen Flatow, testified at
the trial in Florida on June 16, 2005. http://www.flmd.uscourts.gov/Al-Arian/8-03-cr-00077-
JSM-TBM/docs/2230703/0.pdf. *See*, *e.g.*, *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065 (9th
Cir. 2002).

[24]  While detailed information about the connections between Al-Arian and individuals
under investigation in this district cannot be filed other than on an *ex parte* basis, three of the
unindicted conspirators in the Florida trial - - as well as a fugitive co-defendant - - were closely
affiliated with an entity in this district that transferred to Al-Arian substantial sums. *See* the
documents filed with Judge Lee during the hearing on October 19, 2006, filed with our pleading
captioned "Grand Jury Documents Supplied Pursuant to Order of July 27, 2008."

avoid prosecution because, after all, *he had immunity*. Notwithstanding the immunity, he refused

to testify.[25]  His frustration of the government's "ultimate tool" for securing testimony - -

testimony that is the obligation of every individual to provide - - merited prosecution.  Under

these circumstances, enabling him now to avoid punishment for his criminal contempt would

undermine the integrity of the Court, undercut the ability of grand juries to investigate terrorist

financing, and vitiate the ability of judges to compel testimony in the future.

<div style="margin-left: 40%;">

Respectfully submitted,

Dana Boente
Acting United States Attorney

By:            /s/          
      Gordon D. Kromberg
      Virginia Bar No. 33676
      Assistant United States Attorney
      Attorney for the United States
      2100 Jamieson Avenue
      Alexandria, VA  22314
      (703) 299-3700
      (703) 837.8242 (fax)
      gordon.kromberg@usdoj.gov

</div>

---

[25]  His assertion that he eventually provided written responses to some questions, Al-Arian's Memo at 34, is irrelevant and misleading.  The crime of contempt is completed when contumacious conduct has taken place, regardless of whether the subject later complies with the order he earlier violated.  *United States v. Marquardo*, 149 F.3d 36, 39 (1st Cir. 1998).  In any event, Al-Arian placed entire subjects off limits, refused to allow follow-up questions other than in writing, and never agreed to appear before the grand jury or answer questions in person.  "A witness, of course, cannot 'pick and choose' the questions to which an answer will be given." *Yates v. United States,* 355 U.S. 66, 73 (1957).  And, contrary to his assertions that he was indicted in the midst of negotiations, Al-Arian's Memo at 37, he failed to agree to continue those negotiations in order to enable the very polygraph that he now alleges that he was willing to take. *See* "Governments Filing of Email Messages," filed July 14, 2008.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 6, 2009, I electronically filed the foregoing

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to the following:

William E. Olson,
VA Bar. No. 47251
Bryan Cave LLP
700 Thirteenth Street, N.W., Suite 700
Washington, D.C. 20005-3960
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
weolson@bryancave.com


_____/s/_____
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov