**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES** | ) | |
| | ) | **Case No. 1:08cr131** |
| **v.** | ) | |
| | ) | |
| **SAMI AMIN AL-ARIAN** | ) | |
| | ) | |

**DEFENDANT DR. SAMI AMIN AL-ARIAN'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT**

In its opposition to the Motion to Dismiss, the government continues to hope that sheer repetition of argument is the key to prevailing in legal disputes.  Despite the Court's rejection of at least four prior efforts at reconsideration, the government advances the same arguments from the previous four filings and three hearings.  At the same time, after repeated opportunities to submit declarations of identified prosecutors from the plea negotiations, the government continues to refuse to submit a single sworn statement despite the Court's strong encouragement.  Instead, even in the face of a motion to dismiss, the government refuses to address the factual concerns that this Court previously said leaves a "very significant cloud over this criminal prosecution."  (*See* Dkt. No. 98 at 14.)  It essentially has told the Court that it would rather face a dismissal than address those concerns.  So be it.  With a dismissal, the government will be required to deport Dr. Al-Arian and fulfill its obligations that it assumed to him – albeit after extending his confinement by almost three years beyond the agreed sentence.

**I.     The Government Promised Dr. Al-Arian That His Plea Agreement Would Terminate All Business With the U.S. Government.**

In its opposition, the government argues, once again, that the government never promised Dr. Al-Arian that his plea agreement would bar the Eastern District of Virginia ("EDVA") from compelling his testimony.  Noticeably, the government's opposition avoids the most direct and

compelling evidence on this topic – the sworn statements of those who were involved in the plea negotiations.   Dr. Al-Arian has presented detailed declarations from his lead trial counsel, William B. Moffitt, and co-trial counsel, Linda Moreno, who were the central players in negotiating the 2006 plea agreement on behalf of Dr. Al-Arian, in support of his motion to dismiss.  (*See* Dkt. No. 112, Exs. A, B, and E.)   Both Mr. Moffitt and Ms. Moreno stated unequivocally that the central inducement extended by the government to Dr. Al-Arian to plead guilty was the promise that the agreement would terminate all of Dr. Al-Arian' s business with the government as a whole, including a bar on any future compelled grand jury testimony.  (Dkt. No. 112, Ex. A ¶¶ 4-8; Ex. B ¶¶ 17, 19-20, 22; Ex. E ¶ 10.)   Mr. Moffitt and Ms. Moreno identified the specific government attorneys who participated in the negotiations.  Despite this Court's order to compel discovery with respect to the Florida plea negotiations, the government still has not produced a single document on this issue and has not provided any declarations from government attorneys who negotiated the plea agreement contesting Mr. Moffitt and Ms. Moreno's declarations.  Indeed, while refusing repeated opportunities from the Court to supply declarations, the government has the temerity to suggestion that the five declarations from the defense are inadequate.[1]

The government discloses no new evidence in its opposition to the motion to dismiss that contradicts Mr. Moffitt and Ms. Moreno's declaration about the promise made to Dr. Al-Arian to induce his plea.  While using this filing for a fifth argument for reconsideration of the Court's prior rulings, the government asserts categorical denials and tangential arguments to encourage

---

[1]     The government also continues to argue that there is a sufficient evidentiary record in this case. This Court has already rejected this argument.   (*See* Dkt. No. 92, Tr. of Feb. 5, 2009 Hearing, at 15.)   ("MR. KROMBERG: The evidentiary record exists, Judge. THE COURT:  No, it doesn't, Mr. Kromberg.")

the Court not to consider the uncontradicted evidence already before the Court.  These arguments are addressed below.

> **A.      The Court Should Consider Other Evidence in Addition to the Written Plea Agreement.**

The government first contends that the written contract controls and requires Dr. Al-Arian's cooperation regardless of any explicit promises made to Dr. Al-Arian during the plea negotiations.  It asserts that it could compel Dr. Al-Arian to testify because the written plea agreement did not contain the promise at issue and contained an integration clause that makes clear that no side agreements existed.  This argument not only ignores the uncontradicted declarations submitted in support of Dr. Al-Arian motion to dismiss that should be considered by the Court,[2] but also the fact that the written document was orally amended at the plea hearing by the government itself, calling into question the validity of the integration clause.[3]

---

[2]      The government suggests that the Court should not consider this extrinsic evidence because contract rules alone should govern interpretation of plea agreements.  This argument ignores the case law in both the Fourth and Eleventh Circuits requiring courts to consider extrinsic evidence where there is evidence of government overreaching.  (*See* Dkt. No. 112 at 9-10.)  Courts, including this one, have recognized that the analogy between commercial contracts and plea agreements "should not be taken too far" because they raise constitutional issues not present in private contract disputes and because the government must adhere to promises made to defendants during plea negotiations to maintain the integrity of the justice system.  *See United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990); *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986).  In fact, this Court stated "that a plea bargain is more than just a contract because the issues at stake from a defendant's standpoint are his or her individual liberty." (Dkt. No. 108 at 29.)

[3]      The Court has already recognized this point, stating "[w]e know from the plea colloquy, despite the integration clause in the written plea agreement, there was, in fact, an additional plea agreement.  It was orally put on the record.  There's nothing wrong with that, but it shows again that a pure literal reading of just the four corners of the plea agreement would not be accurate." (Dkt. No. 92 at 11.)

In addition, both *United States v. Singleton* and *United States v. White,* discussed more fully in Dr. Al-Arian's motion to dismiss (Dkt. No. 112 at 15 n.9, 17, 20), demonstrate that this Court should still consider extrinsic evidence when interpreting Dr. Al-Arian agreement because there is evidence of government overreaching.  *Singleton*, No. 94-10474, 1995 WL 66792, at **2-4 (affirming a *Santobello* violation in seeking compelled grand jury testimony despite the

Moreover, the government summarily argues that "an agreement not to include a cooperation clause, however, is not equivalent to an agreement to include a non-cooperation clause." (Dkt. No. 116-3 at 4.)  It makes this claim despite the fact that the removed clause, which the government has conceded was taken out at the request of Dr. Al-Arian,[4] would have required the very specific performance that the government now seeks.  The removed clause stated:

> Defendant agrees to cooperate with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charge in this case and other matters.

Once this clause was removed, in conjunction with the conversations that Dr. Al-Arian's attorneys had with the government negotiators on the topic of cooperation, Dr. Al-Arian reasonably believed that he could not be compelled to testify in the EDVA.  The removal of this provision must be considered in the context of the unrebutted declarations of counsel that the parties agreed not to require the standard cooperation obligation as a result of their negotiations, including the express reference to both the IIIT investigation and Mr. Kromberg.  The government does not contest that Dr. Al-Arian and his counsel made clear that any agreement

---

written plea agreement, which contained an integration clause ambiguously not restricting compelled testimony, based on the government's oral non-cooperation promise); *United States v. White,* 366 F.3d at 293, 299-300 (4th Cir. 2004) (remanding the case for an evidentiary hearing on the issue of whether the government made an oral promise that the plea was conditional, based on the defendant's uncontradicted sworn allegation that the government made such a promise, because the government's refusal to abide by such a promise would be overreaching, even though the plea agreement, that did not state that the plea was conditional, included an integration clause).

[4]  (*See* Dkt. No. 92 at 30) ("We don't disagree that there was a plea agreement that had a cooperation clause in there -- I never saw it -- and that as a result of negotiations, that clause was taken out, and I don't disagree that it was taken out because Mr., Mr. Turley's client wanted it taken out, and then we have the plea agreement that we have.")

had to guarantee that he would have no further involvement with the Justice Department and would be deported promptly upon the completion of his sentence.

**B.**     **Dr. Al-Arian Has Presented Extensive Evidence of the Breached Promise.**

Perhaps the most audacious suggestion of the government is its reference to the absence of declarations from Mr. Fernandez, Mr. Fugate, and Mr. Gaugush.  Once again, rather than acknowledge the obvious, the government seeks to create the appearance of division or doubt. Mr. Fernandez has submitted a prior declaration in this case.  (Dkt. No. 112, Ex. C.)  Dr. Al-Arian did not submit a declaration from Mr. Fernandez on the cooperation issue for the simple reason that the agreement that Dr. Al-Arian would not have to cooperate with the government had been resolved before he became counsel in this case.  Mr. Fernandez and his colleagues from Zuckerman Spaeder LLP were brought into the case shortly before the final sentencing to primarily address Dr. Al-Arian's deportation and some issues regarding the statement of facts' section in the plea deal.  By the time that they came into the case, it was resolved (and stated expressly in the plea agreement) that after the completion of the prison sentence, Dr. Al-Arian would be deported.  As this Court repeatedly stated in its encouragement of the government filing declarations, the Court is interested in hearing from counsel with first-hand involvement in the negotiations over cooperation.[5]

---

[5]     The government also argues that because Dr. Al-Arian's attorneys failed to raise the issue of Dr. Al-Arian's non-cooperation before Judge McCoun at the plea hearing, no such agreement could have existed.  Instead of addressing the express agreement discussed in these declarations, the government seeks to focus on the absence of express references to that earlier agreement in this hearing.  Once again, the government seeks to create doubt by ignoring the most obvious explanation.  The lawyers had already previously reached an agreement to drop the cooperation obligation and require deportation promptly after service of Dr. Al-Arian's sentence.  It was viewed as a dead letter.  After resolving this threshold question, the lawyers focused on matters in dispute, including removal of language suggesting any acts of violence despite his acquittals on those counts.  The only reason that the hearing even occurred was the final plea agreement only confined Dr. Al-Arian's obligations to service of his sentence and then deportation.

Moreover, as the government is also aware, Mr. Gaugush is now an Assistant United States Attorney.   Mr. Gaugush has not been approached by the defense for an affidavit specifically because he is now an AUSA in the Middle District of Florida, making his assistance in this case more complicated.   Mr. Gaugush was only brought into the case to assist on deportation and immigration issues.

**C.     The Plea Agreement Bound the Counter-Terrorism Section and the EDVA.**

In its opposition, the government reiterates one of its favorite and least compelling arguments.   It argues that because the plea agreement limited its application to the USAO's office for the Middle District of Florida and the Counter-terrorism section of the United States, the agreement cannot bind the EDVA, which was added to the agreement orally and allegedly in a more limited fashion.

As an initial matter, the government's argument on this point only serves to emphasize the point made repeatedly by both the Court and the defense:  the Counter-terrorism section was an active party in this case and has appeared as counsel in prior hearings.   The involvement of the Section was raised by the Court in one of the first hearings.   In the July 8, 2009 hearing, the Court expressly asked for the identification of Mr. Steven Ward and his office.[6]   When Mr. Kromberg confirmed that he was with the Section, the Court stressed "That in my view has some significance since under the Eleventh Circuit's opinion in this case, that section of the Department of Justice is bound by the terms of the plea agreement Dr. Al-Arian entered." (Dkt. No. 15, Tr. of July 10, 2008 Hearing at 4.)  Mr. Kromberg responded "That's true." (*Id*.)  In the

---

[6]     Steven Ward, a Special Assistant United States Attorney with the Counter-terrorism section of the United States Department of Justice, was "detailed to the United State's Attorney's Office" to work with AUSA Kromberg on the IIIT investigation.  (Dkt. No. 15 at 4.)

February 20, 2009 hearing, the Court observed that "there's a very significant cloud over this criminal prosecution" because

> the Counterterrorism Unit involved in the actual negotiations of the plea agreement and, as I said last time, that same unit, that same section having to have been in the pipeline of approving the request to get immunity orders, and given the fact that I have representations from defense counsel that it was their understanding that the deal they worked out did not involve Dr. Al-Arian being subject to being a witness in any matter relating to the IIIT investigation.

(Dkt. No. 98 at 14).[7]

The immunity orders provided to Dr. Al-Arian required the approval of the Counter-terrorism section of the Department of Justice.  Yet, the government appears now to be suggesting that somehow an agreement reached with Alice Fisher and Cherie Krigsman at Main Justice is not controlling or even relevant in these proceedings.  Indeed, despite repeated references by the defense and the Court, the government simply avoids any discussion of the involvement of the Counter-terrorism section of the Department of Justice in both the plea agreement and the current prosecution.

It was the agreement with the government that included Main Justice that removed the threshold issue of cooperation and allowed for an agreement to be reached with Dr. Al-Arian. Any promise made by Main Justice to secure this agreement is relevant in determining what Dr. Al-Arian understood to be entailed in his plea and how the government secured that agreement. The Justice Department cannot now insist that, while they negotiated this issue and required the defense counsel to come to Washington for such negotiations, they are akin to an entirely

---

[7]    Likewise, the Court questioned the government on the Counter-terrorism section's role in the immunity orders in the February 5, 2009 hearing. The government responded by stating: "Judge, I think what happened is it went to the Office of Enforcement Operations, which has the responsibility for soliciting input, and I believe that the Office of Enforcement Operations solicited the input from the relevant U.S. Attorney's Offices around the country, in this case the Tampa U.S. Attorney's Office, and from the Counterterrorism Section as well." *(Dkt. No. 92 at 3.)*

separate agency in a non-unitary executive system.[8]  To allow such a shell game in negotiations would invite continual abuse and uncertainty in the criminal justice system.

**D.      The Government Has Not Unequivocally Denied Making the Alleged Promise.**

Fourth, while refusing to file declarations from prosecutors like Alice Fisher, Paul Perez, or Cherie Krigsman who are expressly named in prior defense filings, the government claims that the "prosecutors unequivocally deny making the alleged promise."  Yet, the government relies exclusively on a in-court statement made by AUSA Terry Zitek at the November 6, 2006 hearing, where he said "nobody said that" in reference to an oral promise in relation to cooperation being made to Dr. Al-Arian, to support this claim.  (*See* Dkt. No. 116-3  at 12.)

This argument is flawed on many levels.  First, the government takes this three-word snippet out of context and changes its meaning.  In stating "nobody said that," Mr. Zitek was not denying that cooperation was discussed or that the Justice Department expressly assured Dr. Al-Arian or his counsel that (as established in declarations) the agreement would "terminate[] all business between Dr. Al-Arian and the Department of Justice."  (Dkt. No. 112, Ex. A, ¶ 5.)  Rather, he was referring to whether any of Dr. Al-Arian's attorneys raised the issue of the oral agreement at the plea hearing on the narrow issue of whether an evidentiary hearing was warranted. The language in context is as follows:

> He had ample opportunity, as did every other attorney, to say, when we got to the guilty-plea hearing, "Well, the plea agreement is not written quite right. There is something else." Nobody said that . . . .

---

[8]      In *United States v. Harvey*, the court held that "[it] is the Government at large-not just specific United States Attorneys or United States Districts'- that is bound by plea agreements negotiated by agents of Government."  791 F.2d 294, 303 (4th Cir. 1986); (*see also* Dkt. 112 at 11 n. 19).

*U.S. v. Al-Arian*, Case No. 8:03-cr-77-T-20TBM, M.D. Fla., Dkt. No. 1672, Tr. of Nov. 6, 2006 Hearing, at 24. The meaning of this statement is clear in the text. Yet, the government cites the statement as a denial of the existence of these prior negotiations and agreement.

No other government attorney involved in the plea negotiations has ever stated in Court, in the form of a declaration or affidavit, that no such promise was made by the government.[9] In fact, despite the fact that this Court has repeatedly requested such statements from the government, none have been produced. Instead, the government seeks to misconstrue a statement by Mr. Zitek as a substitute for declarations from the identified prosecutors who participated in these negotiations. After misrepresenting the context of this remark, the government goes further in claiming that the statement should be afforded the same weight as sworn declarations or affidavits made under oath, such as the numerous declarations provided by the defense. Although attorneys are officers of the Court and are required to speak truthfully before the Court, there are substantive differences between drafting a declaration on a specific topic.[10] This is precisely why this Court has given the government no less than four express opportunities to rebut the defense declarations with its own sworn statements. For some reason, the government does not want to have these prosecutors deal directly with the express sworn statements of their counterparts in these negotiations.[11] Such declarations are made directly by

---

[9]     The government also indicates in its heading on page 12 ("the Prosecutors Unequivocally Deny Making the Promise at Issue") of its opposition that multiple government negotiators have denied making the promise. The government then only cites Mr. Zitek's comments.

[10]    Even the government's own cited case, *Holloway v. Arkansas*, 435 U.S. 475 (1978), recognizes that statements made by attorneys in court are not the equivalent of statements made under oath.

[11]    The government in *In re Grand Jury Proceedings (Perdue)*, a case relied by the government in this case, did provide an affidavit from the prosecutor who negotiated the plea agreement at issue but the information provided in the affidavit neither supported nor contradicted the defendant's position the government had promised not to compel him to testify

an attorney and not construed third-hand from third parties.   Indeed, the Justice Department appears to recognize the manifest difference between in-court statements and declarations in its steadfast refusal to submit the latter sworn statements in this case.   The government could have easily secured declarations from people like Ms. Fisher to rebut the specific allegations of the defense.   It conspicuously refused repeated calls for it to do so before this Court allowed for the filing of the instant Motion to Dismiss.[12]

## II.    Prior Proceedings Connected With Dr. Al-Arian's Civil Contempt Do Not Bar Dismissal of the Indictment.

The government contends that this Court is collaterally estopped from evaluating whether the government can prove an essential element of the current charges against Dr. Al-Arian based on the prior civil contempt proceedings.   The government, however, cites no support for the proposition that a court can be collaterally barred from examining a legal issue in a new criminal proceeding relevant to a key element of the offenses charged where reliance on previous rulings would perpetuate a constitutional violation and questions about the integrity of the justice system.[13]

---

in the future.  819 F.2d 984, 986 n.2 (noting that the affidavit "neither supports nor contradicts Perdue's statements about the plea agreement").

[12]    The government continues to claim that the defense has failed to identify the specific individual who made the promise that Dr. Al-Arian would not be compelled to testify in the EDVA.  From the outset of this controversy, the defense has offered these details in emails, motions, and declarations.  The uncontradicted declarations of Ms. Moreno, Mr. Moffitt, and Dr. Al-Arian describe specific meetings and the prosecutors who negotiated with the defense on the question of cooperation. Alice Fisher, Paul Perez, Cherie Krigsman, Terry Zitek, Walter Furr, and others have been repeatedly identified.

[13]    The government violates the due process rights of a defendant by failing to comply with the "express or implied terms of a plea agreement."  *United States v. Martin*, 25 F.3d 211, 217 (4th Cir. 1994); *see also United States v. Harvey*, 869 F.2d 1439, 1443 (11th Cir. 1989).  In addition, courts must ensure that a defendant's guilty plea represents the defendant's "voluntarily, knowing, intelligent act" and that it was offered to the defendant "with sufficient awareness of the likely consequences" for such agreement "[t]o constitute a valid waiver of substantial constitutional rights."  *In re Arnett*, 804 F.2d 1200, 1203 (11th Cir. 1986) *see also*

Based on these dual concerns, courts do not apply the parol evidence rule when interpreting plea agreements where there is ambiguity within the plea agreement or evidence of government overreaching. *See Harvey,* 791 F.2d at 300; *see also United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). No court to date, however, has considered the extrinsic evidence in the record on whether the government induced Dr. Al-Arian plea by promising that agreement would end all of his dealings with the Department of Justice. As this Court has recognized, the Middle District of Florida denied Dr. Al-Arian's motion to enforce the plea agreement without consideration of any extrinsic evidence relating to the plea negotiation, based on the face of the plea agreement. (*See* Dkt. No. 108 at 14.) All of the subsequent rulings in the civil contempt proceedings with respect to the validity of the compulsion orders relied on the Middle District of Florida's ruling on the scope of the plea agreement without consideration of the extrinsic evidence.[14]

This Court should find it inequitable and inappropriate to apply the doctrine of collateral estoppel to bar consideration of the validity of the compulsion rulings in light of the extrinsic evidence that has not yet been considered. Collateral estoppel, or issue preclusion, is an

---

*Harvey*, 791 F.2d at 301. Moreover, courts require the government to adhere to promises made to defendants during plea negotiations to maintain the integrity of the justice system. *See id.* at 300, quoting *United States v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972).

[14] The government also contends that this Court should not consider whether it committed a *Santobello* violation because the Fourth Circuit has ruled that the plea agreement should be interpreted in accordance with Eleventh Circuit law and the Eleventh Circuit affirmed the Middle District of Florida's denial of the Motion the Enforce the Plea Agreement. (Dkt. No. 116-3 at 2.) The government, however, ignores the fact that the Fourth Circuit mistakenly found that the Middle District of Florida denied the motion to enforce the plea agreement "[a]fter an evidentiary hearing." *In re Grand Jury Subpoena v. John Doe A01-246*, 221 Fed.Appx. 250, 251 (4th Cir. 2007). In addition, both Fourth or Eleventh Circuit law requires courts to consider extrinsic evidence when interpreting plea agreements when there is evidence of government overreaching. *Harvey,* 791 F.2d at 300; *Copeland*, 381 F.3d at 1105. Based on the record currently before this Court, including the new evidence, this Court should find it should rule on the *Santobello* issue in this new criminal context because extrinsic evidence, including new evidence, has not been considered.

equitable doctrine and this Court has broad discretion to decide whether to apply it.  *See Maryland Cas. Co. v. ARMCO, Inc.*, 822 F.2d 1348, 1355 (4th Cir. 1987); *Rye v. United States Steel Mining, Co.*, 856 F.Supp. 274, 279 (E.D. VA 1994); *see also Evans v. Katalinic*, 445 F.3d 953, 956 (7th Cir. 2006).   Application of the collateral estoppel doctrine could lead to a miscarriage of justice by permitting a *Santobello* violation to stand that Dr. Al-Arian has not been permitted to challenge based on the available extrinsic evidence.  The doctrine of collateral estoppel does not restrict a Court from preventing a defendant from being prosecuted for a criminal offense, and potentially sentenced to a significant term of imprisonment, based on government action that violated the defendant's constitutional rights and raises concerns about the integrity of the justice department.

Moreover, courts have specifically held that application of the collateral estoppel doctrine is inappropriate in circumstances where there is new evidence that was not previously considered.  *See, e.g, Evans*, 445 F.3d at 956, *Rye*, 856 F.Supp. at 279.  The fact that MD FL opposed ED VA's mid-March 2006 application to seek Dr. Al-Arian's compelled testimony constitutes such new evidence with respect to whether the government committed a *Santobello* violation.[15]   This "internal communication" raises doubts about whether the government

---

[15]     While the government suggests that "the most sensible interpretation" of MD FL's objection to the USAO EDVA's March 2006 application to the Office of Enforcement Operations ("OEO") was concern about violating the expeditious deportation provision of the plea agreement, the government fails to produce any actual evidence to support this position. (Dkt. No. 116 at 24 n.14.)  The more reasonable interpretation of this new evidence is that MD FL opposed USAO EDVA's March 2006 application to OEO out of concern that USAO EDVA's actions violated the government's overall obligation under the plea agreement to end all business between Dr. Al-Arian and the government.

In addition, the MD FL prosecutors could not have known whether or not Dr. Al-Arian would have completed his criminal sentence prior to his sentencing at the time they objected to EDVA's application.  The document cited by the government, *U.S. v. Al-Arian*, Case No. 8:03-cr-77-T-20TBM, M.D. Fla., Dkt. No Dkt. No. 1558, only shows that the parties agreed to expedited sentencing after Dr. Al-Arian's change in plea and not that a previously scheduled

overreached in seeking Dr. Al-Arian's testimony after his May 1, 2006 sentencing.  This, and other facts, were unknown to the Middle District of Florida court when considering the Motion to Enforce the Plea Agreement.  Collateral estoppel does not bar this Court from considering this evidence in this new criminal proceeding.

### III.     The Government Has Committed a *Santobello* Violation That Requires Dismissal of this Case.

The government's assertion that it has not committed a *Santobello* violation in seeking orders to compel Dr. Al-Arian's testimony fails based on the factual record before the Court. The uncontradicted declarations of Mr. Moffitt, Ms. Moreno, and Dr. Al-Arian constitute evidence of government overreaching that requires consideration of extrinsic evidence in interpreting the scope of Dr. Al-Arian's plea agreement.  *See United States v. Garcia*, 956 F.2d 41, 44 (4th Cir. 1992); *United States v. Singleton*, No. 94-10474, 1995 WL 66792, at **2-4 (9th Cir. Feb. 16, 1995).  The *Garcia* and *Singleton* courts each found *Santobello* violations based on facts analogous to this case.[16]  (*See* Dkt. No. 112 at 15-20.)

---

sentencing date was "moved up."  (*See* Dkt. No. 116-3 at 25 n.15.)  Dr. Al-Arian was in fact sentenced on May 1, 2006.  This document, however, does not suggest that the MD FL prosecutors did not believe at the time they objected to EDVA's application that Dr. Al-Arian would be sentenced before the completion of his expected term of imprisonment in June 2006.

[16]     The government contends that this Court should not follow *Garcia* because to date no writing memorializing the government's promise that Dr. Al-Arian's plea would terminate his business with the United States government has been identified.  (*See* Dkt. No. 116-3 at 9 n.6.) As demonstrated by *Singleton* which considered extrinsic evidence despite no writing demonstrating government overreaching, *Garcia* establishes that this Court should consider extrinsic evidence of a promise outside the plea agreement where there is some evidence that the government has taken action in violation of an actual promise.  1995 WL 66792, at **2-4.

*Hartman v. Blankenship*, cited by the government as being the more applicable Fourth Circuit case, found that the district court had erred in finding, based on the record before it, that the prosecutor had promised to recommend a certain sentence.  825 F.2d 26, 29-31 (4th Cir. 1987).  The *Hartman* record consisted solely of the prosecutor's "unsworn" statement in arguing a motion in which he stated repeatedly in his conversation with the defendant that he was not promising to recommend a sentence and the defendant's prepared statement at a state sentencing modification hearing in which he stated he was confused about what his sentence would be.  *Id.*

The factual situation in the two cases that the government cites, *Perdue* and *In re Altro*, in support of its assertion that its conduct does not constitute a *Santobello* violation, both differ because in each case the defendant did not present evidence of a non-cooperation promise. *Perdue*, 819 F.2d 984, 987 (11th Cir. 1987); *In re Altro*, 180 F.3d 372, 376 (2d Cir. 1999). In *Perdue*, the defendant could not, and did not, allege governmental overreaching because he presented no evidence of an actual non-cooperation agreement. 819 F.2d at 987 (11th Cir. 1987) (Hatchett, J. concurring). The *Altro* court found that the parol evidence rule was correctly applied because the plea agreement was unambiguous and "because the affirmation of Altro's attorney does not indicate that the Government here made any statement – oral or written – that could be construed as a 'no cooperation' promise." 180 F.3d at 376.

In contrast, Mr. Moffitt and Ms. Moreno have submitted declarations that present evidence of such an oral non-cooperation promise and that their declarations, along with the declaration of Dr. Al-Arian, show that they informed Dr. Al-Arian about this promise and explained to him that it relieved him of an obligation to testify before future grand juries. Based on *Garcia* and *Singleton* and the record before it, this Court should find that Dr. Al-Arian reasonably understood that the government had promised to terminate all business with him as a condition of his plea and that it breached this agreement when seeking to compel his testimony in this District. Because the compulsion orders are invalid because they were obtained in violation of *Santobello*, the Indictment should be dismissed.[17]

---

at 29-30. Here, the record contains significant evidence of an actual promise by the government including multiple declarations provided by Mr. Moffitt, Ms. Moreno, and Dr. Al-Arian.

[17]     The fact that the government's act to seek to compel Dr. Al-Arian's grand jury testimony constitutes a *Santobello* violation causes the compulsion orders to be invalid and provides a complete defense to criminal contempt. *See United States v. Pearce*, 792 F.2d 397, 403 (3d Cir. 1986) (remanding the case for a new trial because the defendant had been deprived of the

### IV.     The Government Must Prove Dr. Al-Arian Acted Willfully.

Despite the fact that this Court has explicitly stated that "the issue . . . in this case is willfulness" and that the Fourth Circuit case law is clear that willfulness is a required element of criminal contempt, the government still refuses to recognize or adequately discuss the issue.  The defense has argued in its Motion to Dismiss that because Dr. Al-Arian believed his plea agreement relieved him from testifying before the grand jury in the EDVA, his conduct before the grand jury did not constitute a  willful violation of Judge Lee's orders.

Controlling case law is clear.  "To support a conviction of criminal contempt for violation of a court order, it must be proved beyond a reasonable doubt, that a person willfully, contumaciously, intentionally, with a wrongful state of mind, violated a decree which was definite, clear, specific, and left no doubt or uncertainty in the minds of those to whom it was addressed." *Richmond Black Police Officers Ass'n v. City of Richmond, Virginia*, 548 F.2d 123, 129 (4th Cir. 1977) (internal citations omitted).

Willfulness for purposes of criminal contempt is negated if the defendant engaged in a good-faith attempt to comply with a court order based on a plausible alternative approach, even if the individual was mistaken in his beliefs.  *See United States v. McMahon*, 104 F.3d 638, 646 (4th Cir. N.C. 1997); *see also United States v. Crowe*, No. 94-5690, 1996 WL 67223, at *1 (4th Cir. Dec. 16, 1996).[18]  In light of his plea agreement, Dr. Al-Arian believed that he was relieved

---

defense of challenging the validity of the compulsion order on the grounds that it violated his plea agreement).

[18]     The government suggests that the holding of *McMahon,* which allows for the negation of willfulness if the defendant pursued a plausible good-faith alternative, only applies if the subpoenas themselves are unclear and cites dicta from *United States v. Myers*, 302 Fed. Appx. 201, 205 (4th Cir. 2008) for this proposition.  Nothing in *McMahon*, however, suggests that the court must first find that subpoenas are unclear before examining whether the refusal to testify constitutes a plausible but mistaken alternative.  In *McMahon*, the court did examine whether the court order was unclear and then moved on to examine whether the defendant had acted willfully

from being compelled to testify before the grand jury in the EDVA.  Once the EDVA called Dr.

Al-Arian, he sought to enforce the plea agreement and yet still provided information to the

prosecution through affidavits signed under oath – and offered repeatedly to take polygraphed

examinations to show that he was not withholding evidence on IIIT.  This plausible alternative

approach promised to provide the government with all information that it claimed it requested,

while still providing the protections that the plea agreements promised Dr. Al-Arian.  This Court

can and should properly determine whether Dr. Al-Arian engaged in a plausible alternative to

complying with the order that negated the required willfulness inherent in proving a charge of

criminal contempt.

Given the discussion above and the fact that the government has completely failed to

provide the Court with any evidence that refutes the affidavits provided by the defense or

otherwise establishes Dr. Al-Arian's willfulness as to the criminal contempt, the charges against

Dr. Al-Arian can be dismissed.

**V.      Given the Factual Uncertainties and Concerns Raised by the Court, A Trial in This Case Would Undermine both the Integrity of the Court and the Criminal Justice System.**

The government advances an extreme argument to avoid a dismissal while refusing to

factually rebut the new disclosures of the parties and the stated concerns of the Court.  No matter

how serious the Court may view the allegations of misrepresentations or bad faith negotiations,

the government suggests that the Court lacks any authority to do anything about it.  Thus, the

---

but assigned no interdependence between the two examinations.  In addition, the *McMahon* court cites *United States v. Greyhound Corp.*, 508 F.2d 529 (7th Cir. Ill. 1974) for the proposition at issue.  In *Greyhound*, the Seventh Circuit stated that "[w]illfulness, for the purpose of criminal contempt, does not exist where there is a "'good faith pursuit of a plausible though mistaken alternative.'"  508 F.2d at 533 (citing *In re Brown*, 454 F.2d 999, 1007 (1971)).  The *Greyhound* court does not suggest in any way that the Court must first make a determination on the clarity of the order before addressing the intent of the accused.

government refuses to address the issues raised by the Court by claiming that, even if the Court believed that Dr. Al-Arian was relying on a clear promise by the government, it would still have to submit the case to the jury.  If accepted, the government's argument would all but remove the Court from its historical role as the gatekeeper to the justice system.  *See United States v. Russell*, 411 U.S. 423, 430 (1973); *Hampton v. United States*, 425 U.S. 484, 487 (1976).  Under this approach, the Court would perform little more than an administrative function in presiding over trials with no independent authority to guarantee that justice is not being perverted or undermined by the parties.[19]

The Supreme Court has made clear that federal courts are expected to exercise their supervisory powers to maintain civilized standards of procedure and practice in the federal courts.  *McNabb v. United States*, 318 U.S. 332 (1943); *see also United States v. Omni Int'l Corp.*, 634 F.Supp. 1414, 1438 (D. Md. 1986); *United States v. Baskes*, 433 F.Supp. 799, 806 (N.D. Ill. 1977).

The cases cited by the government, in an effort to support its argument that dismissal in not appropriate in this case, not surprisingly, do not stand for the government's proposition.  In *United States v. Posada Carriles*, 541 F.3d 344, 353 (5th Cir. 2008), the court was dealing with a wholly different issue of whether the government is barred from pursuing both criminal and civil charges without disclosing such information to a defendant.  Far from giving prosecutors a free

---

[19]     The government in this case is continuing the very same approach that has led a federal court in Washington, D.C. to move for contempt sanctions and a special prosecutor in terrorism and white collar crimes cases.  In the cases of Aymen Saeed Batarfi and former Senator Ted Stevens, the government is accused of simply refusing to hand over evidence that was material to the defense.  *See* Gail Russell Chaddock, *Ethics Lapses Dog Prosecutors of Stevens' Corruption Trial*, Christian Science Monitor, April 7, 2009; Marisa Taylor, *Judge: U.S. Hid Witness's Mental Illness in Guantanamo Cases*, McClatchy Newspapers, April 6, 2009.  In the Stevens case, as here, the Justice Department simply ignored repeated efforts by the Court to disclose facts – even ultimately ignoring a court order.  In this case, the Justice Department has again declined to answer specific allegations or supply information that would resolve these questions.

hand in withholding or misrepresenting material facts from a negotiation, the Fifth Circuit actually said that there are circumstances where the failure to disclose facts would bar a prosecution.  This issue in *Posada Carriles* was a claim that the government could not conduct separate civil and criminal proceedings – an issue not raised in the instant matter.  The Fifth Circuit reaffirmed that it would not allow prosecutions where the government makes "material misrepresentations" about the nature of the investigation or inquiry.  *Id*. at 355.

Dr. Al-Arian is not alleging that the prosecutors failed to raise voluntarily the possible risk of being called to a grand jury.  Declarations have been filed establishing that the issue was raised with the Justice Department as a critical threshold element for a plea and that the Justice Department secured the plea based on assurances that there would be no compelled testimony and that Dr. Al-Arian would be promptly deported upon service of his sentence.  The allegation in this case is that the plea was secured on the basis of a clear misrepresentation on a critical fact from the negotiations.

*United States v. Stringer*, 535 F.3d 929 (9th Cir. 2008) is equally unavailing.  It also dealt with the issue of parallel civil and criminal investigations.  The Ninth Circuit also notes that misleading a defendant on a material issue is grounds for dismissal, but affirms that the government is allowed to proceed on separate civil and criminal tracks without affirmatively warning an individual of that fact.  *Id*. at 936-37.  In *Stringer*, the defendant claimed that he had waived his right against self-incrimination without knowing that he could still face criminal charges based on that information.  Neither of these cases suggests that, when a critical fact is raised and resolved in negotiation in a criminal case, the prosecutors may misrepresent or mislead a defendant in securing a plea.

The government also cites *United States v. Campusano*, 947 F.2d 1, 5 (1st Cir. 1991) and *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007) to suggest that it can negotiate a plea

based on an understanding that there would be no compelled testimony while secretly planning to call the individual to a grand jury soon after the plea is entered in court.  The citation to *Campusano* is particularly curious since the court warned prosecutors against engaging in misleading negotiations.  The court held that prosecutors do not have to warn about collateral consequences of a guilty plea.  947 F.2d at 4-5.  The case did not involve, as here, direct negotiations on the issue of cooperation and the need for prompt deportation.  The court noted that, when dealing with prosecutions in state and federal systems, the risk is not direct but collateral.  *Id.* at 5.  There is nothing collateral in the current case involving prosecution not only in the federal system but by the same offices that participated in the negotiations.  The court stressed that a defendant "may attack the plea if it was 'induced by a material omission tantamount to a misrepresentation.'"  *Id.* (quoting *United States v. Bouthot*, 878 F.2d 1506, 1511 (1st Cir. 1989)).  The First Circuit has ruled clearly that dismissal is necessary when "guilty pleas were induced by a material omission tantamount to a misrepresentation: the state prosecutor's failure to mention the ongoing federal investigation." *Bouthot*, 878 F.2d at 1511.

*Jordan* involved a standard plea to criminal acts for a reduction of sentence.  One of the the defendants, Gordon, objected when he was later indicted on other crimes and learned that the state prosecutors had notified the federal government of weapons violations.  509 F.3d at 194.  There was no plea negotiation over the guarantee of cooperation and no failure to disclose a material fact linked to those negotiations.  *Id.*  As with *Campusano*, the prosecutions were by two wholly different jurisdictions – state and federal – and the later prosecutors were not involved in any way with the original prosecution or, more importantly, with the negotiations.  *See generally id.*  In this case, there are unrebutted declarations that the issue was expressly raised in the negotiations and it was the assurance of no compelled testimony that secured the plea agreement from Dr. Al-Arian.

After the Court expressed such concern over the questions raised in this case, the Justice Department has answered those questions in the affirmative that such practices would not be viewed by the Department as a barrier to prosecution.  Thus, the government has refused to rebut the declarations establishing that Dr. Al-Arian was given these assurances as the basis for his plea while insisting that, even if true, it can do so in this and other cases without adverse consequences.  The implications are obvious.  If the government can simply refuse to supply the information requested by the Court and still prosecute an individual, there is little protection for the criminal defendants or the criminal justice system as a whole.  There is not even a suggestion of regret or concern expressed in the government's filing.  Indeed, the government insists that prosecuting such individuals even in the face of new evidence of wrongdoing is an act that protects "the integrity of the court and legal system."  (Dkt. No. 116-3. at 37.)  In so arguing, the government has left the Court with the prospect of creating precedent to fulfill the very dangers that the Court warned against in the prior hearings.[20]

## CONCLUSION

In light of the foregoing and his memorandum in support of his Motion to Dismiss, Dr. Sami Amin Al-Arian respectfully asks the Court to dismiss the indictment.

---

[20]     The government includes an inappropriate and offensive footnote at the conclusion of it opposition regarding alleged victims of Al-Arian's offenses.  (Dkt. No. 116-3 at 41 n.23.)  Dr. Al-Arian was acquitted of Count 2 of the indictment (Conspiracy to Murder, Maim, or Injure Persons at Places Outside the United States).  The final PSR, in Dr. Al-Arian's case, in discussing the pled to charges, explicitly stated that "there are no individuals who were directly or proximately harmed as the result of the commission of the offense of the conviction."

Respectfully submitted,

Dr. Sami Amin Al-Arian

By Counsel

Jonathan Turley (pro hac vice lead counsel)
2000 H Street, N.W.
Washington, D.C. 20052
Phone No. (202) 994-7001
Facsimile No. (202) 994-9811
jturley@law.gwu.edu

/s/ P.J. Meitl
William E. Olson, VA Bar. No. 47251
P.J. Meitl, VA Bar. No. 73215
BRYAN CAVE LLP
700 Thirteenth Street, N.W., Suite 700
Washington, D.C. 20005
Phone: (202) 508-6000
Facsimile: (202) 508-6200
weolson@bryancave.com
pj.meitl@bryancave.com

Dated:  April 13, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mr. Gordon Kromberg, Esq.
Assistant United States Attorney
2100 Jamieson Ave.
Alexandria, Virginia 22314-5794
(703) 299-3800 phone
gordon.kromberg@usdoj.gov

*Attorney for the United States*

 

 

 

                                               /s/
                                      P.J. Meitl, VA Bar. No. 73215
                                      Bryan Cave LLP
                                      700 Thirteenth Street, N.W., Suite 700
                                      Washington, D.C. 20005-3960
                                      Telephone:  (202) 508-6000
                                      Facsimile:  (202) 508-6200
                                      pj.meitl@bryancave.com

                                      *Counsel for Dr. Al-Arian*